GLENN D. POMERANTZ (SBN 112503)
*Glenn.Pomerantz@mto.com*
KELLY M. KLAUS (SBN 161091)
*Kelly.Klaus@mto.com*
ROSE LEDA EHLER (SBN 296523)
*Rose.Ehler@mto.com*
ALLYSON BENNETT (SBN 302090)
*Allyson.Bennett@mto.com*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Tel: (213) 683-9100
Fax: (213) 687-3702

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC.; LUCASFILM LTD. LLC; TWENTIETH CENTURY FOX FILM CORPORATION; and WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiffs, <br><br> vs. <br><br> VIDANGEL, INC., <br><br> Defendant. | **CASE NO.** <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Disney Enterprises, Inc. ("Disney"), Lucasfilm Ltd. LLC ("Lucasfilm"), Twentieth Century Fox Film Corporation ("Fox"), and Warner Bros. Entertainment Inc. ("Warner Bros.") ("Plaintiffs"), through their undersigned counsel, hereby bring this Complaint against VidAngel, Inc. ("Defendant" or "VidAngel") for infringing Plaintiffs' exclusive rights under the Copyright Act (17 U.S.C. § 101 *et seq.*) and for violating the Digital Millennium Copyright Act (§ 1201 *et seq.*) ("DMCA"). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 501(b), 1203(a). Plaintiffs allege, on personal knowledge as to themselves and information and belief as to others, as follows:

## INTRODUCTION

1. VidAngel operates a video-on-demand ("VOD") service that streams popular movies and television shows. VidAngel charges users for watching that content but has no authorization and pays nothing for the rights it exploits. At its core, VidAngel is no different from many other unlawful online services. Plaintiffs bring this action to stop VidAngel's infringement of their rights.

2. VidAngel's VOD service looks and feels very similar to licensed services such as Netflix, Hulu, and iTunes. Users can search for copyrighted motion picture content by popularity, genre or categories (e.g., "New Releases"):



1   And, like these other services, VidAngel streams movies via computer, mobile
2   device (e.g., a smartphone, iPad, or tablet), or internet-connected television (e.g.,
3   through Apple TV, Chromecast or Roku).
4       3.   But there is a fundamental difference between VidAngel and licensed
5   VOD services:  VidAngel does not have permission to copy Plaintiffs' movies and
6   television shows or to stream them to VidAngel's users.  Instead, VidAngel appears
7   to circumvent the technological protection measures on DVDs and Blu-ray discs to
8   create unauthorized copies and then uses those copies to stream Plaintiffs' works to
9   the public without authorization.
10      4.   By running this service without a license, VidAngel blatantly violates
11  the Copyright Act and confers on itself unfair and unlawful advantages vis-à-vis
12  licensed services in the VOD marketplace.  First, by cutting out payments to
13  copyright owners, VidAngel is able to offer prices that undercut licensed services
14  and charge only $1 for daily access to movies in standard definition format.
15  VidAngel emphatically touts its below-market pricing:



26      5.   Second, because VidAngel absolves itself of having to abide by
27  contractual restrictions, VidAngel offers content that is not available on licensed
28  VOD services.  For example, VidAngel makes many newly released titles available

for streaming well before they are available via licensed VOD services. Recently, VidAngel exploited this competitive advantage to offer *Star Wars: The Force Awakens* for $1 a day at a time when lawful VOD services did not yet have the right to offer that work for single-day access at all:



VidAngel also flaunts this unfair competitive advantage by expressly promoting a selection of titles that are available on VidAngel but "Not Available on Netflix":



6. VidAngel publicly defends its unlicensed activities with legally and factually false claims. For example, VidAngel insists that it has the right to bypass copyright owner consent because VidAngel says it is "selling," not renting, movies

- 3 - COMPLAINT

1  to its users. It does not matter whether VidAngel sells or rents movies. In either
2  case, VidAngel would need copyright owner consent to circumvent access controls
3  on protected discs, make copies of that content, and stream performances of the
4  content to the public. VidAngel does not have consent to do any of these things.
5  And, VidAngel is not "selling" movies. VidAngel is simply providing an
6  unauthorized dollar-a-day VOD rental service.

7      7. VidAngel also asserts that the Family Movie Act of 2005 ("FMA")
8  justifies its unlicensed activities because VidAngel offers its users the ability to skip
9  and mute words and images that VidAngel thinks its users may find objectionable.
10 The FMA does not justify VidAngel's violation of Plaintiffs' rights. The FMA
11 narrowly permits technology that "mak[es] imperceptible," at a home user's
12 direction, limited portions of content during playback "from an authorized copy" of a
13 motion picture. 17 U.S.C. § 110(11). Nothing in the FMA gives VidAngel the right
14 to copy or publicly perform Plaintiffs' copyrighted content without authorization.
15 Nor does the FMA give VidAngel the right to circumvent the technological
16 protection measures on DVDs and Blu-ray discs that safeguard access to Plaintiffs'
17 content. This Complaint does not challenge the FMA or businesses acting lawfully
18 under it. This Complaint does challenge VidAngel's operation of a business that
19 goes far beyond conduct allowed under the FMA and that is based on the unlawful
20 exploitation of Plaintiffs' rights.

## THE PARTIES

22     8. Plaintiff Disney Enterprises, Inc. is a corporation duly incorporated
23 under the laws of the State of Delaware with its principal place of business in
24 Burbank, California. Disney owns and controls the copyrights and exclusive rights
25 in the content that it or its affiliates produce or distribute ("Disney's Copyrighted
26 Works").

27     9. Disney has obtained Certificates of Copyright Registration for the
28 Copyrighted Works. The attached Exhibit A includes several of Disney's

Copyrighted Works, along with their registration numbers, that VidAngel has infringed and continues to infringe.

10. Plaintiff Lucasfilm Ltd. LLC is a limited liability corporation duly incorporated under the laws of the State of California with its principal place of business in San Francisco, California. Lucasfilm owns and controls the copyrights and exclusive rights in the content that it or its affiliates produce or distribute ("Lucasfilm's Copyrighted Works").

11. Lucasfilm has obtained Certificates of Copyright Registration for the Copyrighted Works. Exhibit A includes several of Lucasfilm's Copyrighted Works, along with their registration numbers, that VidAngel has infringed and continues to infringe.

12. Plaintiff Twentieth Century Fox Film Corporation is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Fox owns and controls the copyrights and exclusive rights in the content that it or its affiliates produce or distribute ("Fox's Copyrighted Works").

13. Fox has obtained Certificates of Copyright Registration for the Copyrighted Works. Exhibit A includes several of Fox's Copyrighted Works, along with their registration numbers, that VidAngel has infringed and continues to infringe.

14. Plaintiff Warner Bros. Entertainment Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Warner Bros. owns and controls the copyrights and exclusive rights in the content that it or its affiliates produce or distribute ("Warner Bros.' Copyrighted Works").

15. Warner Bros. has obtained Certificates of Copyright Registration for the Copyrighted Works. Exhibit A includes several of Warner Bros.' Copyrighted

Works, along with their registration numbers, that VidAngel has infringed and continues to infringe.

16. Defendant VidAngel, Inc. is a Delaware corporation with its principal place of business at 249 N. University Ave. Provo, Utah 84601. VidAngel also has offices in California.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 501(b), 1203(a).

18. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) 1400(a).

**BACKGROUND FACTS**

**Plaintiffs and Their Copyrighted Works**

19. Plaintiffs or their affiliates produce or distribute some of the most popular and critically acclaimed motion pictures and television shows in the world.

20. For Disney, this copyrighted content includes motion pictures produced by Walt Disney Pictures, Pixar and Marvel Studios, LLC. Disney or its affiliates own and distribute television programming developed by or for ABC as well as other networks, including, the Disney Channels, Free Form, and ESPN.

21. For Lucasfilm, this copyrighted content includes the motion pictures and television programming it has produced.

22. For Fox, this copyrighted content includes motion pictures produced by Twentieth Century Fox and Fox 2000, Fox Searchlight Pictures, and Twentieth Century Fox Animation. Fox or its affiliates own and distribute television programming developed by Twentieth Century Fox Television and Fox21 Television Studios for broadcast networks including FOX, FX, ABC, CBS, NBC and TBS, as well as for cable networks, including, FX, Showtime, and A&E.

23. For Warner Bros., this copyrighted content includes motion pictures produced by Warner Bros. Entertainment Inc. and its predecessors, its production

1  partners, and its affiliates. Warner Bros. or its affiliates produce or distribute
2  television programming developed by, among others, Warner Bros. Television, for
3  broadcast networks including ABC, CBS, NBC, and The CW, as well as for cable
4  networks and VOD providers such as Netflix.

5     24. Plaintiffs have produced and distribute some of the most popular
6  copyrighted works today and historically.

    a. Some of Disney's well-known feature-length motion pictures include *Inside Out* (2015), *Big Hero 6* (2014), *Frozen* (2013), *Toy Story 3* (2010), *Up* (2009), *WALL-E* (2008), *Finding Nemo* (2003), *Monsters, Inc.* (2001), *The Lion King* (1994), *Aladdin* (1992) and *Beauty and the Beast* (1991).

    b. Some of Lucasfilm's well-known feature-length motion pictures include *Star Wars: The Force Awakens* (2015), *Indiana Jones and the Kingdom of the Crystal Skull* (2008), *Star Wars: Episode III – Revenge of the Sith* (2005), *Star Wars: Episode II – Attack of the Cones* (2002), *Star Wars: Episode I – The Phantom Menace* (1999) and *Indiana Jones and the Last Crusade* (1989).

    c. Some of Fox's well-known feature-length motion pictures include *The Martian* (2015), *The Revenant* (2015), *The Peanuts Movie* (2015), *Life of Pi* (2013), *Avatar* (2009), *Mrs. Doubtfire* (2003), *Ice Age* (2002), *Independence Day* (2000) and *Home Alone* (1990).

    d. Some of Warner Bros.' well-known feature-length motion pictures include *San Andreas* (2015), *The Intern* (2015), *Gravity* (2013), *Man of Steel* (2013), *ARGO* (2012), *The Dark Knight* (2008), *Harry Potter and the Sorcerer's Stone* (2001) and *The Iron Giant* (1999).

VidAngel currently offers each of these movies, as well as television shows and numerous other of Plaintiffs' Copyrighted Works, for VOD streaming.

25. Plaintiffs have invested (and continue to invest) substantial resources and effort each year to develop, produce, distribute and publicly perform their Copyrighted Works.

26. Plaintiffs own and have the exclusive U.S. rights (among others) to reproduce and publicly perform their Copyrighted Works, including by means of streaming those works over the internet to the public.

27. Plaintiffs distribute and publicly perform their Copyrighted Works in various formats and through multiple distribution channels, including: for exhibition in theaters; through television broadcasts; through cable and direct-to-home satellite services (including basic, premium, "pay-per-view" and VOD services); and through authorized, licensed internet VOD services such as Netflix, Hulu, iTunes, Google Play, Amazon Video and VUDU. Plaintiffs also distribute their works to the home viewing market, including on DVDs and Blu-ray discs.

28. Disney also owns and operates Disney Movies Anywhere, Disney's platform that enables consumers to access Disney, Marvel, Pixar and Lucasfilm titles across digital video platforms and devices using their accounts with participating licensed internet video services.

29. Plaintiffs have not provided authorization, permission or consent to VidAngel to copy or publicly perform the Copyrighted Works, or to exercise any other rights affecting their copyrights with respect to the Copyrighted Works.

**VidAngel's Unlawful Service**

30. VidAngel operates a VOD streaming service located online at http://www.vidangel.com and available through a mobile application, which users can download and use on their internet-connected smartphones, tablets and televisions. In addition to streaming movies and television shows, VidAngel offers users who want to skip or mute content within certain categories the ability to select filter settings that will make such content imperceptible during playback. VidAngel users must select at least one category to filter. As discussed below, however, the

single category can include the opening or closing credits, thus allowing VidAngel to stream essentially the entire movie unfiltered.

31. VidAngel accomplishes the very core of its service—copying and streaming copyrighted motion picture content—by violating copyright law and Plaintiffs' rights. VidAngel obtains the Copyrighted Works it streams by apparently circumventing technological protection measures designed to prevent unauthorized access to and copying of the copyrighted content on DVDs and Blu-ray discs. VidAngel then copies that protected content and streams the Copyrighted Works from those unauthorized copies, by internet transmissions, to members of the public. VidAngel's justifications for its blatant infringing conduct are without merit.

### ***VidAngel Circumvents Technological Protection Measures to Access and Copy Plaintiffs' Copyrighted Works***

32. DVDs and Blu-ray discs are optical discs that contain recorded material in digital form. Each type of disc includes technological protection measures (or "TPMs") that protect against unauthorized access to and copying of the copyrighted content that is encrypted on those discs. The TPMs that protect Plaintiffs' content on DVDs and Blu-ray discs include the Content Scramble System (for DVDs) and the Advanced Access Content System and/or BD+ (for Blu-ray discs).

33. The TPMs protect audiovisual content on DVDs and Blu-ray discs through the use of encryption and keys embedded in the content recorded on the physical discs. Licensing organizations control access to the TPM technologies, so as to secure authorized playback of content on DVDs or Blu-ray discs and so as not to permit unauthorized access to or copying of copyrighted content. These licensing and technology systems allow copyright owners to distribute their content on DVDs or Blu-ray discs, while limiting unauthorized copying or redistribution of that content. The TPMs effectively control access to copyrighted content on DVDs and Blu-ray discs, respectively.

34. VidAngel circumvents the TPMs on DVD and Blu-ray discs to access Plaintiffs' Copyrighted Works for the purpose of copying those works and has no authorization to do so. VidAngel's circumvention of the TPMs violates Section 1201 of the DMCA.

### *VidAngel's Unauthorized Copying and Streaming to the Public of Plaintiffs' Copyrighted Content*

35. After circumventing the TPMs, VidAngel makes unauthorized digital copies of the works on the underlying DVD and Blu-ray discs and uses the unauthorized copies to transmit performances of Plaintiffs' Copyrighted Works to members of the public.

36. VidAngel markets itself as transmitting performances of copyrighted works, through VOD streaming, to members of the public:



37. VidAngel's unauthorized copying and streaming of the Copyrighted Works violates Plaintiffs' exclusive rights to reproduce and publicly perform the Copyrighted Works under 17 U.S.C. §§ 106(1), (4).

### *VidAngel's Efforts to Characterize Its Service as Legitimate Fail*

38. VidAngel offers two fictions to justify its unlicensed VOD service. Both are meritless.

**(a)** ***VidAngel's "Sale" Fiction Does Not Justify its Illegal VOD Service***

39. VidAngel claims its service is legal because it is selling, not renting, content to its users. Indeed, VidAngel publicly admits that it would be illegal for it to offer a VOD "rental" service without authorization from copyright owners.[1] But VidAngel is wrong that the sale/rental distinction makes a difference. In either case, VidAngel would need to obtain copyright owner authorization to decrypt copyrighted content on protected discs, to copy that content, and to stream that content to the public.

40. VidAngel nevertheless perpetrates the fiction that it is "selling" discs to its users in the first place. VidAngel itself explains the "buy and sellback" transaction in terms that highlight the fact it is charging users as little as a dollar a day for temporary VOD access to popular movies and television shows. The following screenshot and language from a "how-to" use VidAngel video posted right on the service's homepage show that the purported "sale" is a gimmick:



In 15 seconds, here's how VidAngel lets you watch movies for one dollar. You buy a movie for 20 dollars. Don't worry, it ends up being one dollar. Since you own the movie, you can legally set your filters. Now watch your movie. Then, with the click of a button, sell it back to us for 19 dollars of credit. That means each movie is only one dollar. It's that simple. Buy for 20, set filters, watch it, sell it back for 19. Enjoy your one dollar movie.[2]

---

[1] VidAngel's "How To" page includes the following question and response: "Why can't I just rent movies? It is not legal for VidAngel to rent movies to you."

[2] www.vidangel.com

VidAngel, by its own "don't worry" assurance, confesses to its users (and the world) that VidAngel is providing a dollar-a-day VOD rental service.

41. Although VidAngel purports to "sell" copyrighted content, it discourages users from "keeping" the content they purportedly "purchase." Before watching a movie or television show, the user can check a box to "Auto-Sellback" after he or she has finished watching the content:



If the VidAngel user does not select the "Auto-Sellback" option, a popup message appears when the user has finished his or her viewing; the popup encourages the user to "SELL BACK NOW" for the daily price. VidAngel's "Buy, Watch, Sell Back" is a fiction that fails to hide VidAngel's real business: providing a VOD streaming service to users in return for a daily fee.

42. VidAngel's offering of individual *episodes* of television shows further evidences "Buy, Watch, Sell Back" to be a complete fiction. Plaintiffs distribute entire *seasons* of television shows, rather than individual episodes, on DVDs or Blu-ray discs. Therefore, VidAngel cannot actually be "selling" a disc containing television programming to its users when it offers to stream television shows on a per-episode basis only—a method not available on DVD or Blu-ray products.

43. Regardless of the label, VidAngel is running an unlicensed VOD streaming service. When a user requests that VidAngel stream a movie or television show, VidAngel streams (without authorization) the underlying copyrighted content from a digital copy that VidAngel made (without authorization). At all relevant

1 times, VidAngel, not the user, has dominion and control over the digital copy and (to
2 the extent it still exists) whatever physical DVD or Blu-ray disc VidAngel used to
3 access and copy the content in the first instance.  VidAngel needs, and does not have,
4 Plaintiffs' authorization to copy and stream their content.

        **(b)**    *<u>VidAngel Cannot Use The Family Movie Act to Justify its Illegal Streaming Service</u>*

7       44.    The FMA does not shield VidAngel's unlicensed service.  The FMA
8 provides that one does not infringe copyright by (a) "making imperceptible, by or at
9 the direction of a member of a private household … limited portions" of motion
10 picture content "during a performance in or transmitted to that household for private
11 home viewing, from an authorized copy of the motion picture"; or (b) creating or
12 providing computer technology that enables lawful making-imperceptible activity.
13 17 U.S.C. § 110(11).  But, the FMA does not "impact[] established doctrines of
14 copyright."  151 Cong. Rec. S501 (daily ed. Jan. 25, 2005) (Sen. Hatch).  The FMA
15 requires that any copy or performance made pursuant to that statute be otherwise
16 "authorized"—that is, not violating the copyright owner's other exclusive rights.  17
17 U.S.C. § 110(11).  Likewise, the FMA does not sanction the circumvention of the
18 TPMs that protect access to the copyrighted content on DVDs or Blu-ray discs.  *See*
19 151 Cong. Rec. at S502 (FMA does not allow circumvention "for the purpose of
20 engaging in the conduct covered by" the FMA).

21       45.    VidAngel is not "mak[ing] imperceptible . . . limited portions" of
22 motion picture content in the course of an otherwise lawful transmission.  17 U.S.C.
23 § 110(11).  Rather, VidAngel provides on-demand access to the motion picture itself,
24 without any authorization to do so.  Nothing in the FMA authorizes such conduct.

25       46.    VidAngel also permits users to watch essentially unfiltered movies and
26 television shows by selecting to filter just the credits and nothing more.  If a user
27 wants to watch an unfiltered version of the content, he or she can do so through
28 VidAngel with minimal effort and at a fraction of the price charged by licensed

1 services. Indeed, some people already have started to make social media postings
2 touting the fact they can use VidAngel to watch movies and television shows
3 essentially unfiltered; as VidAngel continues to grow, more and more current and
4 potential users will be encouraged to use the service in the same way:



47. VidAngel did not always offer its filtering service through its current infringing model. VidAngel originally distributed an internet web browser "plug-in" that muted and skipped content as it was streamed from other services—notably, Google Play, which is authorized to provide Plaintiffs' content. Presumably, VidAngel altered its business model to profit directly from the unlawful copying and exploitation of the Copyrighted Works at the expense of Plaintiffs and their relationships with streaming service licensees—authorized services that are being undercut by VidAngel's unauthorized service.

### *VidAngel's Conduct Causes Immediate and Irreparable Harm*

48. VidAngel currently claims to have more than 1,500 titles available for streaming and claims to be adding motion pictures at a rate of 60 per week. VidAngel intends to offer streaming of all new movies that have received more than $10 million in domestic sales.

49. If left unabated, VidAngel will undermine Plaintiffs' relationships with their authorized licensees and interfere with Plaintiffs' ability to negotiate with those legitimate VOD services. Because VidAngel cuts out payments to copyright owners for the rights it exploits, VidAngel is able to undercut licensed services, which pay

for the same content.  VidAngel explicitly advertises itself as a way to "Save on Popular New Releases" compared to licensed VOD services:



50. Public media outlets have picked up on VidAngel's ability to undercut the pricing of authorized distributors.  One online review noted the price comparison: "Even if you turn the filter entirely off, it's the cheapest streaming rental out there, and about the same as Redbox, without the hassle of going to the store, or remembering to return the disc."³

51. If VidAngel continues offering performances of copyrighted content not yet available on authorized streaming services, VidAngel also will interfere with Plaintiffs' ability to distribute their content, including through authorized licensees or other legitimate distribution channels.  VidAngel offers an entire category of movies and television programs, including many of the Copyrighted Works, that are "Not on Netflix."  As described above, VidAngel recently advertised that it offers *Star Wars: The Force Awakens* for $1 per day when that title was not available for single-day rental elsewhere.  Licensed VOD services, in contrast, often are not authorized to offer single-day "rentals" until weeks after VidAngel offers such access for the same titles.

---

³ "Rent Edited Streaming 'Clean Flicks' – A Review of VidAngel's New Edited Movie Service," Mormon Life Hacker (Jun. 9, 2015) *available at* <http://mormonlifehacker.com/rent-edited-streaming-clean-flicks-review-vidangel-movie-service/>.

52. VidAngel's circumvention of the TPMs and its making unauthorized copies undermines Plaintiffs' ability to negotiate for quality controls in the dissemination of their copyrighted content.

53. By characterizing VidAngel as a legitimate and lawful alternative to licensed online services, VidAngel threatens to confuse consumers and the public and drive up early and immediate adoption of the VidAngel service by numerous additional end users.

54. VidAngel's unlawful conduct and unfair competition with licensed distribution channels causes Plaintiffs immediate and irreparable harm. Unless enjoined, VidAngel's illegal actions will continue.

## FIRST CAUSE OF ACTION

**(Copyright Infringement, 17 U.S.C. §§ 106(1), (4))**

55. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 54 inclusive.

56. VidAngel infringes Plaintiffs' exclusive rights to copy and make public performances of the Copyrighted Works, in violation of 17 U.S.C. § 106(1), (4).

57. VidAngel does not have Plaintiffs' authorization to make digital copies of the Copyrighted Works.

58. VidAngel does not have Plaintiffs' authorization to publicly perform the Copyrighted Works.

59. VidAngel's acts of infringement are willful, in disregard of and with indifference to Plaintiffs' rights.

60. As a direct and proximate result of the infringements by VidAngel, Plaintiffs are entitled to damages and VidAngel's profits in amounts to be proven at trial.

61. Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per statutory award by virtue of

1  VidAngel's willful infringement, or for such other amounts as may be proper under
2  17 U.S.C. § 504.

3      62. Plaintiffs further are entitled to recover their attorneys' fees and full
4  costs pursuant to 17 U.S.C. § 505.

5      63. As a direct and proximate result of the foregoing acts and conduct,
6  Plaintiffs have sustained and will continue to sustain substantial, immediate and
7  irreparable injury, for which there is no adequate remedy at law. Unless enjoined
8  and restrained by this Court, VidAngel will continue to infringe Plaintiffs' rights in
9  their Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C.
10 § 502.

## SECOND CAUSE OF ACTION

**(Violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq.*)**

13      64. Plaintiffs incorporate herein by reference each and every averment
14 contained in paragraphs 1 through 54 inclusive.

15      65. Section 1201(a)(1)(A) of the DMCA provides in pertinent part that
16 "[n]o person shall circumvent a technological measure that effectively controls
17 access to a work protected under [the Copyright Act]." 17 U.S.C. § 1201(a)(1)(A).

18      66. Plaintiffs use TPMs to effectively control access to, and to protect the
19 exclusive rights of copyright in, motion pictures, television programs, and other
20 works protected by the Copyright Act.

21      67. On information and belief, VidAngel circumvents the TPMs of the
22 DVD and Blu-ray discs containing the Copyrighted Works, and, therefore, VidAngel
23 has violated 17 U.S.C. § 1201(a)(1)(A).

24      68. This circumvention in violation of the DMCA constitutes a separate and
25 independent unlawful act and claim for relief from those stated in the first cause of
26 action.

27      69. Plaintiffs have sustained and will sustain actual damage as the result of
28 VidAngel's DMCA violations, including, among other things, damages to the value

of the Copyrighted Works and the reduction in Plaintiffs' goodwill in the Copyrighted Works. 17 U.S.C. § 1203(c)(2). Plaintiffs are also entitled to VidAngel's profits from its violations of the DMCA. *Id.*

70. Alternatively, and at their election, Plaintiffs are entitled to an award of the maximum statutory damages as permitted by the DMCA. *Id*. § 1203(c)(3).

71. VidAngel's conduct, unless enjoined and restrained by this Court, will cause immediate and irreparable injury to Plaintiffs who have no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b)(2), Plaintiffs are entitled to preliminary and permanent injunctions prohibiting VidAngel's further violations of § 1201.

72. Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against VidAngel and against all of its affiliates, agents, servants, employees, partners and all persons in active concert or participation with it, for the following relief:

1. For Plaintiffs' damages and VidAngel's profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages; or for such other amounts as may be proper pursuant to 17 U.S.C. §§ 504(c), 1203(c).

2. For preliminary and permanent injunctions enjoining VidAngel, and all persons acting in concert or participation with it, from publicly performing, reproducing, or otherwise infringing in any manner any copyrighted work owned or controlled by Plaintiffs (including without limitation any Copyrighted Work) and from circumventing technological measures protecting any copyrighted work owned or controlled by Plaintiffs (including without limitation any Copyrighted Works).

3. For prejudgment interest according to law.

4. For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. §§ 505 and 1203.

5. For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable by jury.

DATED: June 9, 2016                    MUNGER, TOLLES & OLSON LLP


By:     */s/ Kelly M. Klaus*
            KELLY M. KLAUS

Attorney for Plaintiffs