Ryan G. Baker (Bar No. 214036)
  rbaker@bakermarquart.com
Jaime Marquart (Bar No. 200344)
  jmarquart@bakermarquart.com
Scott M. Malzahn (Bar No. 229204)
  smalzahn@bakermarquart.com
Brian T. Grace (Bar No. 307826)
  bgrace@bakermarquart.com
BAKER MARQUART LLP
2029 Century Park East, Sixteenth Fl.
Los Angeles, California 90067
Telephone:   (424) 652-7800
Facsimile:   (424) 652-7850

David Quinto (Bar No. 106232)
  dquinto@VidAngel.com
VIDANGEL, INC.
3007 Franklin Canyon Drive
Beverly Hills, CA 90210-1633
Telephone:  (213) 604-1777

Peter Stris (Bar No. 216226)
  peter.stris@strismaher.com
Brendan Maher (Bar No. 217043)
  brendan.maher@strismaher.com
Elizabeth Brannen (Bar No. 226234)
  elizabeth.brannen@strismaher.com
Daniel Geyser (Bar  No. 230405)
  daniel.geyser@strismaher.com
STRIS & MAHER LLP
725 S. Figueroa St, Suite 1830
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299

Attorneys for Defendant and
Counterclaimant VidAngel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC.; LUCASFILM LTD. LLC; TWENTIETH CENTURY FOX FILM CORPORATION; AND WARNER BROS. ENTERTAINMENT, INC., | CASE NO. CV16-04109-AB (PLAx) |
| Plaintiffs, | **VIDANGEL INC.'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR AN ORDER [1] STRIKING VIDANGEL'S MOTION TO CLARIFY [DKT. NO. 182] FOR FAILURE TO COMPLY WITH LOCAL RULE 7-3 AND [2] SETTING SCHEDULE FOR RE-NOTICED MOTION** |
| vs. | |
| VIDANGEL, INC., | The Hon. André Birotte Jr. |
| Defendant. | Courtroom:   7B |
| | Trial Date:   None Set |
| VIDANGEL, INC., | [Filed concurrently herewith the June 22, 2017 Declaration of David W. Quinto] |
| Counterclaimant, | |

vs.

DISNEY ENTERPRISES, INC.;
LUCASFILM LTD. LLC;
TWENTIETH CENTURY FOX FILM
CORPORATION; AND WARNER
BROS. ENTERTAINMENT, INC.,

         Counterclaim Defendants.

1

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT.................................................................................1

ARGUMENT...........................................................................................................2

I.     PLAINTIFFS TACITLY CONCEDE THEY HAVE NO FACTUAL
       BASIS TO CLAIM IRREPARABLE INJURY.................................................2

II.    PLAINTIFFS FURTHER TACITLY CONCEDE THEY HAVE NO
      LEGAL BASIS TO OPPOSE VIDANGEL'S MOTION..................................3

III.   VIDANGEL'S NEW TECHNOLOGY IS THE SAME
      AS ITS LEGACY TECHNOLOGY IN MOST RESPECTS...........................4

IV.   PLAINTIFFS' PURPORTED QUESTIONS CONCERNING
      VIDANGEL'S NEW SERVICE REFLECT ONLY THAT THEY
      HAVE NOT READ VIDANGEL'S PAPERS.................................................5

V.    VIDANGEL AND THE PUBLIC ARE ENTITELD TO AN EARLY,
      WITHOUT PREJUDICE, MERITS DECISION..............................................8

VI.   PLAINTIFFS OPEN-ENDED DELAY REQUEST IS POLITICALLY
      MOTIVATED.................................................................................................9

VII.  VIDANGEL WAS ENTITLED TO AN ADVISORY OPINION
      WHEN IT MET AND CONFERRED FOR MONTHS WITH
      REGARD TO THAT OPINION....................................................................11

CONCLUSION.......................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC*,
 710 F.3d 579 (5th Cir. 2013) ...............................................................................11

*eBay Inc. v. MercExchange, LLC*,
 547 U.S. 388(2006)...................................................................................................8

*Flexible Lifeline Sys. v. Precision Lift, Inc.*,
 654 F.3d 989 (9th Cir. 2011)...................................................................................9

*Matter of Hendrix*,
 986 F.2d 195 (7th Cir. 1993) .................................................................................11

**Federal Statutes**

17 U.S.C. § 110(11) ....................................................................................................3

**Rules**

L.R. 7-3 ..............................................................................................................*passim*

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

**Preliminary Statement**

VidAngel predicted that Plaintiffs[1] would oppose any filtered streaming service, even one that could only enrich them.  Plaintiffs' overreaching *ex parte* application proves that point.  Plaintiffs argue they should not even have to respond to the Motion for at least 83 days of virtually unlimited and totally one-sided discovery, all tracing to the fact that VidAngel met and conferred as required by the Local Rules, described and documented it, but failed to provide a separate heading for that discussion.  Obviously, any Local Rule 7-3 issue can be cured by refiling the Motion next week with a statement of compliance, something VidAngel has already offered to do.  Or, the Court may order that Plaintiffs be granted an additional week to respond.  Local Rule 7-3 does not grant an opposing party broad, open-ended discovery as part of the meet and confer process.  If it did, every motion would be filibustered with discovery.

Plaintiffs want very badly to avoid filing an opposition to VidAngel's motion because *they have no legitimate basis to do so*. The motion poses a simple question: how could a service that does not involve decryption, fully compensates Plaintiffs and their licensed partners for every stream VidAngel filters, works in conjunction with the studios' own streaming service licensees, *increases* the market for Plaintiffs' titles, and operates as Plaintiffs told both this Court and the Ninth Circuit it should, possibly cause Plaintiffs irreparable harm?  Both VidAngel and thousands of families[2] deserve an answer to this simple question without further delay.  No

---

[1] Plaintiffs include Disney Enterprises Inc., Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, and Warner Bros. Entertainment, Inc.

[2] On June 21, 2017, U.S. Senators Orrin G. Hatch and Mike Lee, together with U.S. Representatives Mia B. Love, Rob Bishop and Chris Stewart, wrote to numerous content creators that demonstrates the urgency of this case pointing out the strong interest of the American public in on-line filtering services, acknowledged the existence of this litigation, and expressing their "hope that [filtering] technology could ultimately become available across multiple devices and multiple streaming services.  (*See* Declaration of David Quinto Dated June 21, 2017 (footnote continued)

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

further discovery is needed to answer that question.

At its core, the new service is the identical to the legal system to which Plaintiffs have already taken discovery.  (June 21 Quinto Dec. ¶ 6.)  What is new or different in the new service was explained in detail in VidAngel's moving papers.  Under the new service, a customer establishes an account with a licensed streaming service ("LSS") through its established procedures, and then purchases a title directly from the LSS, before VidAngel streams a filtered version of the title to the customer.  VidAngel clearly described those facts – and more – in the June 19, 2017 Declaration of David W. Quinto and the Proposed Order that accompanied the Motion.  The law is clear that a court may clarify a preliminary injunction order to state that a proposed service would or would not violate it, even if that clarification might be considered an advisory opinion.  VidAngel understands that if its new service differs in any material way from the one described in its papers, the consequence could be contempt.  And, if Plaintiffs believe that VidAngel's description of the new service is insufficient to allow the Court to clarify the Preliminary Injunction, they must make that showing in their opposition.  There is no excuse to delay the ruling on the Motion for months while depriving VidAngel of the majority of its business.   VidAngel therefore request the Court rule on the Motion now and allow Plaintiffs to revisit the issue later should they uncover evidence of irreparable injury.

## **Argument**

## I. **PLAINTIFFS TACITLY CONCEDE THEY HAVE NO FACTUAL BASIS TO CLAIM IRREPARABLE INJURY**

Plaintiffs nowhere dispute, or even question, that VidAngel's new technology eliminates any likelihood of every claimed irreparable injury they pointed to in

---

("June 21 Quinto Dec."), Ex. G.)

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

seeking a preliminary injunction.  Plaintiffs based their preliminary injunction request on the arguments that (i) the Digital Millennium Copyright Act ("DMCA") can be violated even in the absence of any injury and VidAngel exceeded its permission to decrypt the content of DVDs; (ii) VidAngel threatened to undercut Plaintiffs' ability to negotiate profitable streaming deals with licensed streaming services ("LSSs"), which could fear that their customers might choose to watch less expensive, filtered content using VidAngel; (iii) VidAngel might disrupt Plaintiffs' distribution cycles by offering filtered content for streaming before Plaintiffs authorized unfiltered streaming rentals; and (iv) VidAngel might disrupt Plaintiffs' ability to sell "windowing" opportunities  to a specific LSS, charging it a premium for the right to begin offering a motion picture for streaming before its competitors may do so.  VidAngel's new technology resolves every one of those concerns.[3]

## II.  **PLAINTIFFS FURTHER TACITLY CONCEDE THEY HAVE NO LEGAL BASIS TO OPPOSE VIDANGEL'S MOTION**

Plaintiffs also do not dispute that if VidAngel's new technology operates as VidAngel has declared under oath that it does, VidAngel's service would be protected under copyright law as a fair use.  Still further, Plaintiffs do not even contend that the Court must engage in a fair use analysis at all to approve VidAngel's new service.  They have represented both to this Court and to the Ninth Circuit that a filtering technology based on the use of authorized streams would be protected by the Family Movie Act ("FMA").  17 U.S.C. § 110(11).  For example, in oral argument to the Ninth Circuit, Plaintiffs' counsel Don Verrilli advised that VidAngel should "appl[y] filtering to a licensed stream.  It connects up with Amazon or Google, whoever it is who have actually done what they should have

---

[3] Plaintiffs also have not pointed to any aspect of VidAngel's new technology as creating a *likelihood* of irreparable injury, as opposed to some hypothetical injury they believe they might somehow discover through months of discovery.

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 ● Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

1   done and gotten a license for the public performance rights."  (Declaration of David

2   Quinto dated June 21 ("June 21 Quinto Dec."), Ex. H at 28:16-22.)   Plaintiffs'

3   counsel also argued that if VidAngel came up with "some different system that

4   doesn't violate the DMCA," VidAngel should "talk to the district judge about

5   modifying the injunction.  I think that's the proper course here."  (*Id.* at 25:8-12.)

6   That is exactly what VidAngel has done.

7        The other concerns Plaintiffs voice—such as that VidAngel's service might

8   be so terrible that its customers come to believe that even the quality of LSSs must

9   also be terrible—are nothing more than wholly unfounded speculation.  (And the

10  studios are able to point to that particular "concern" only because, by denying

11  streaming licenses to all filtering services, they deny themselves the ability to

12  exercise quality control over those services.)   The Court should not enjoin

13  VidAngel's new service based on rank speculation.

14  **III.   VIDANGEL'S NEW TECHNOLOGY IS THE SAME AS ITS LEGACY**

15       **TECHNOLOGY IN MOST RESPECTS**

16       The novel features of VidAngel's new technology are explained at length in

17  the Motion to Clarify and supporting Declaration of David Quinto dated June 19,

18  2017.  When VidAngel developed its new technology, instead of attempting to

19  reinvent the wheel, it maintained virtually all the core functionality of its enjoined

20  technology.  (June 21 Quinto Dec., ¶ 6.)  Specifically, it left unchanged (i) its use of

21  a master file of an unaltered version of the motion picture to be filtered, (ii) its

22  splitting of the master file into segments for streaming at multiple bitrates, (iii) the

23  manner in which the personal filter setting impact the segments shown to a viewer,

24  (iv) the encryption of the segments to prevent unauthorized access to the segments

25  stored in the cloud, (v) the use of decryption keys delivered only to customers who

26  now pay for a license to view content provided by a licensed streaming service

27  ("LSS"), and (vi) the limitation that content streamed by VidAngel can be viewed

28  by customers on only as many screens as are permitted by the source of the content,

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

i.e., just one screen when DVDs were used but one to four screens as permitted by Netflix, Amazon, or other LSS.  (*Id*.)  Owing to VidAngel's extensive incorporation of its legacy technology into its new technology, the only significant differences between the two are those called out in paragraphs 6 and 7 of the June 19 Quinto Declaration.  Those differences allow for the elimination of decryption and the switch from disc-based filtering to stream-based filtering.  (*Id*.)  The legacy technology was, of course, the subject of written, expert, and deposition discovery a year ago.  (*Id*.)  Thus, Plaintiffs have already conducted discovery on these functional aspects of VidAngel's new technology.

## IV.   PLAINTIFFS' PURPORTED QUESTIONS ABOUT VIDANGEL'S NEW SERVICE REFLECT ONLY THAT THEY HAVE NOT READ VIDANGEL'S PAPERS

Plaintiffs would justify their request for unlimited written discovery, an expert inspection, and two full-length depositions on the basis that VidAngel's papers describing its new technology purportedly raise important new questions.  Not so.  Plaintiffs are merely speculating that if given enough time and discovery they *might* find some evidence of irreparable injury.

The answers to Plaintiffs' "significant questions" can all be found in VidAngel's papers.  The first "significant question" asked by Plaintiffs is whether "VidAngel itself is streaming from its own 'master' copies of works that VidAngel has created on its own servers rather than layering its filters over an authorized stream from the licensed streaming services."  (Plaintiffs' *Ex Parte* Application ("*Ex Parte* App.") at 1:14-18 (Dkt 183).)  In the next breath, though, Plaintiffs concede they know the answer: "VidAngel indisputably itself is publicly performing works to its users."  (*Id*. at 1:18-19.)  Paragraph 7 of the June 19 Quinto Declaration explains the streaming process in granular detail.  Paragraph 7(F) reflects that Plaintiffs' understanding is correct.  And that fact is not buried in a declaration; VidAngel's Memorandum of Points and Authorities ("MPAS") both called attention

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

to that copying up front (MPAS at 5-6) and argued extensively that such copying is protected by fair use.  (*Id*. at 12-18.)

Next, referring to Paragraph 6 of the June 19 Quinto Declaration, Plaintiffs raise a "key question" concerning whether VidAngel purchases "a digital copy for every customer or one master copy?"  Secondarily, they ask, "Does [VidAngel] purchase a digital download or rent a stream?"  Again, one has only to read the June 19 Quinto Declaration to know the answers.  As explained in that declaration at 2:14-18, paragraph 6 addresses "the creation of available filters," while paragraph 7 addresses "the streaming of the movie."  Paragraph 6 thus has nothing to do with customers.  The answer, explained in paragraph 7 is that *every* VidAngel customer who watches a filtered version of a movie pays an LSS for that privilege: "Upon selecting a motion picture, VidAngel either accesses the consumer's subscription video-on-demand ('SVOD') with his or her LSS, or accesses a stream the consumer has already purchased from the LSS."  (June 19 Quinto Dec., ¶ 7(D).)  Plaintiffs' secondary question is answered in paragraph 6(A): "VidAngel *purchases* a digital transmission of a motion picture."

Plaintiffs then ask "what a 'framebuffer' version is" and "what the nature is of the copies VidAngel appears to be generating."  Again, the answers were provided clearly (and could readily be explained by Plaintiffs' own IT personnel): "A 'framebuffer' is a portion of random access memory ("RAM") containing a bitmap image file format used to store and refresh a video display buffer . . . . [T]he framebuffer version is essentially a digital copy of the video . . . ."  (June 19 Quinto Dec. at 3:18-20.)  The "nature of the copies" VidAngel creates is also explained: "the VidAngel tagger then generates eight versions of the movie, each at different bitrates."  (June 19 Quinto Dec., ¶ 6(E).)

Next, Plaintiffs express concern that VidAngel's technology might not work as represented (which, if true, would mean that an order clarifying the Preliminary Injunction might not insulate VidAngel from contempt).  They ask "how,

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

technologically, th[e] stream [VidAngel receives from an LSS] gets matched to the stream the customer receives." (*Ex Parte* App. at 8:13-17.)  Although VidAngel did not explain how that aspect of its technology is accomplished because it is irrelevant to any copyright analysis, VidAngel did explain that it matches the stream to the consumer so that, "if a consumer tries to watch [the movie being streamed] simultaneously on a second device using the LSS's app, the LSS is alerted to the existence of multiple streams and can enforce any requirement or limitations concerning the use of a second device." (June 19 Quinto Dec., ¶ 7, n.10.)  Further, VidAngel continuously monitors the stream so that if the LSS cuts off or stops providing its stream for any reason, VidAngel will also terminate its stream." (June 19 Quinto Dec. at 6:18-25.)

In seeking the Preliminary Injunction, Plaintiffs did not dispute that VidAngel's use of its cloud-based encryption system had never resulted in any instance of piracy.  Nevertheless, Plaintiffs now complain that "VidAngel does not give any details." (*Ex Parte* App. at 8.)  Of course, Plaintiffs were allowed to, and did, conduct discovery of VidAngel's security technology before moving for the entry of a Preliminary Injunction.  The same security technology is still in use.

Sadly, there is some merit to Plaintiffs' last concern—quality control—but that problem is entirely created by Plaintiffs, themselves.  For technological reasons, no service forced to ride on top of a licensed stream will ever be quite as good as it could be if it were licensed to stream itself.  Any such service is necessarily limited by the constraints of the stream it receives but would be free of those constraints if it initiated the stream.  Even using its new technology, VidAngel might well be unable filter closed captioning and cannot provide surround sound.  It has, though, overcome hurdles that other services, such as ClearPlay, cannot surmount.  For example, VidAngel's new technology allows filtered streaming of high definition (HD) content that no other service is able to provide.  The evidence before the trial court in considering the preliminary injunction request was that various independent

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

services that measure consumer satisfaction all found that VidAngel's customers reported higher levels of satisfaction than did consumers who watched unfiltered streamed content from the studios' LSS providers.  (Declaration of Neal Harmon in support of VidAngel's Opposition to Plaintiffs' Motion for Preliminary Injunction, ¶ 27 (Dkt 43).)

# V.  VIDANGEL AND THE PUBLIC ARE ENTITLED TO AN EARLY, *WITHOUT PREJUDICE*, MERITS DECISION

Plaintiffs' proposed discovery would, on its face, delay any further briefing on the Motion to Clarify for **at least 83 days** while Plaintiffs took extensive, one-sided discovery of VidAngel.  Specifically, Plaintiffs propose that they be permitted to (1) serve unlimited written discovery, (2) inspect VidAngel's new service (presumably by an expert), and (3) take two seven-hour depositions.  (*Ex Parte* App. at 9-10.)  The proposed schedule does not allow for *any* discovery by VidAngel.   It ignores that VidAngel would seek to depose Plaintiffs' expert who inspects its technology and their person most knowledgeable on any alleged irreparable harm. Rather than wait up to five months to conduct discovery, the Court should consider the present Motion to Clarify on the merits, but without prejudice to Plaintiffs' right to contest it later should they find evidence of irreparable injury resulting from VidAngel's new service.  Again, the mere suggestion that this new technology – which by definition works in conjunction with Plaintiffs' existing distribution channels and windows – might be somehow harmful should afford the basis for delaying a merits decision on VidAngel's motion by five or more months.   If Plaintiffs learn through discovery that VidAngel's new technology is not as described, contempt could follow.  For that reason, VidAngel exercised great care in describing its new technology in great detail.  If they learn of some *real*, non-speculative irreparable injury owing to the new technology, then a new preliminary injunction motion would be in order.  Until, then, Plaintiffs are not entitled to the benefit of the doubt.  *See eBay Inc. v. MercExchange, L.L.C*, 547 U.S. 388, 392-3

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

(2006); *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 995-996 (9th Cir. 2011) (requiring an "independent showing" that the plaintiff was likely to suffer irreparable harm).

## VI.   PLAINTIFFS' OPEN-ENDED DELAY REQUEST IS POLITICALLY MOTIVATED

Plaintiffs are trying to avoid being boxed into a corner by VidAngel.  If they acknowledge that VidAngel's new technology causes them no injury whatever and is protected by the FMA (as they have suggested to this Court (*see* VidAngel's MPAS at 8-9) and to the Ninth Circuit (*see* June 21 Quinto Dec., Ex. H), they must allow filtering.  Alternatively, if they acknowledge that VidAngel's new technology causes them no injury and furthers the purposes of the FMA, VidAngel's new technology would be a lawful fair use.  On the other hand, if they oppose VidAngel's motion when they cannot show any injury, much less irreparable injury, by attempting to argue that "unauthorized copying is never permitted," the truth will be laid bare.  They oppose filtering, plain and simple.

Plaintiffs' immediate predicament lies in the fact that VidAngel has asked members of Congress to clarify and update the FMA.  As Congress did during 2003-04, it is trying to persuade the stakeholders to negotiate an agreement to allow American families to enjoy filtered content in private, and specifically by allowing American families to have filtered content streamed to them.  The senator who sponsored the FMA in the Senate, Orrin G. Hatch, has again taken the lead.  Following months of communications directly with interested parties and indirectly through their lobbyists, Senator Hatch, joined by Senator Mike Lee and Representatives Mia B. Love, Rob Bishop, and Chris Stewart, wrote to, among others, the Motion Picture Association of America ("MPAA"), the Directors Guild of America ("DGA"), the Producers Guild of America, the Internet and Television Association of America, and even VidAngel's competitor ClearPlay, to that end.  Senator Hatch and the other co-authors of the letter observed that:

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

> At the time the FMA was passed, most home viewing of movies occurred via DVD. That is no longer the case. The advent and increasing popularity of online streaming has transformed the way Americans watch movies. Gone are the days when most people traveled to a video rental store, or purchased a DVD, to watch a movie at home. Nowadays when someone wants to watch a movie, more likely than not he or she goes on Netflix, Amazon, or other streaming service; selects the movie; and then streams it directly onto a computer or linked device.

(June 22 Quinto Dec., ¶ 15 and Ex. G thereto.)  The authors then explained their concerns to motion picture industry:  "We . . . do wish to express to you our strong desire that consumers be able to have access to *effective online filtering technology* consistent with the FMA and other applicable laws.  We would hope that such technology could ultimately become available *across multiple devices and multiple streaming services." Id.* (emphasis supplied).

Owing to its newly developed, unique technology, VidAngel is now the *only* service able to offer online filtering across multiple devices and multiple streaming services. (June 21 Quinto Dec., ¶ 17.)   Again, although Plaintiffs frame their request as requiring a three-month delay to be followed by a negotiated briefing schedule on a motion that is already pending, they surely realize that VidAngel will want to depose their expert who examines VidAngel's technology and conduct an additional deposition of whomever they designate to testify concerning any perceived irreparable injury they claim VidAngel's new technology will cause.  In that event, there would be a four- or five-month delay before the parties even begin to negotiate a briefing and hearing schedule.  That delay is as unacceptable as it is unnecessary for the purposes of the Motion.

The sensible resolution is to allow Plaintiffs an additional week to oppose VidAngel's pending motion, and then decide the motion without prejudice to Plaintiffs' right later to challenge any order granting it based on the discovery of

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

1   evidence that VidAngel's new technology is somehow causing an irreparable

2   injury.  It would be unfair, to say the least, to deny VidAngel the right to engage in a

3   very substantial portion of its business for months and months on end if VidAngel's

4   new service is either protected by the FMA (as Plaintiffs have intimated) or is a fair

5   use.  And, if this Court believes that VidAngel's new technology does not pass

6   judicial muster, VidAngel is entitled to know that now, before months of costly and

7   potentially needless discovery.

8   **VII.   <u>VIDANGEL WAS ENTITLED TO AN ADVISORY OPINION AND</u>**

9   **<u>MET AND CONFERRED FOR MONTHS WITH REGARD TO THAT</u>**

10   **<u>OPINION</u>**

11   VidAngel was entitled to an "advisory opinion" when it met and conferred

12   with Plaintiffs in January because courts recognize that litigants should not have to

13   undergo the expense and expenditure of time to develop a new technology only for

14   the court to disapprove it.  *See Matter of Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993)

15   (*citing Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)); *Daniels Health Scis.,*

16   *LLC v. Vascular Health Sciences, LLC*, 710 F.3d 579, 586 (5th Cir. 2013).

17   Accordingly, when VidAngel initially contacted Plaintiffs on January 17, 2017,

18   concerning a "method to provide a filtering service that would avoid the necessity to

19   decrypt content while ensuring that content holders are paid a streaming license

20   fee," it deserved a substantive response from Plaintiffs.  Rather than discuss the

21   proposed method, Plaintiffs flatly refused to engage in any dialogue about "a service

22   that does not yet exist."  (June 21 Quinto Dec., Ex. B.)  Indeed, Plaintiffs suggest in

23   their *ex parte* application that they believed they had no obligation to meet and

24   confer with VidAngel about this service because it was "purely hypothetical."  (Dkt.

25   183 at 2.)

26   Plaintiffs' purported ignorance of the law is hard to believe.  More likely it is

27   merely a cover for their refusal to take any position concerning VidAngel's new

28   technology.  In fact, the parties have been engaged in on-going discussions about

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

VidAngel's new service for months.  (June 21 Quinto Dec. ¶¶ 4-9.)  Indeed, after VidAngel's new technology was fully developed, VidAngel again approached Plaintiffs asking them to agree that the technology should not be enjoined.  (*Id.* ¶¶ 7-8.)  Plaintiffs again refused, and only then did the Motion follow.  (*Id.*)  VidAngel has, thus, complied with both the spirit and the substance of Local Rule 7-3.  And, of course, nowhere does Local Rule 7-3 state that it entitles an opposing party to months of additional discovery merely to determine if it might credibly oppose a motion.  Finally, Plaintiffs are not opposed to re-filing this Motion to cure any alleged technical violation of Local Rule 7-3, to the extent the Court requires it.

## CONCLUSION

For the foregoing reasons, VidAngel respectfully requests that the Court deny Plaintiffs' *Ex Parte* Application. Alternatively, should it find that VidAngel somehow violated Local Rule 7-3, the Court should continue the date of the Motion to allow Plaintiffs any additional time the Court deems is necessary to comply with Local Rule 7-3.

DATED: June 21, 2017                    BAKER MARQUART LLP

                                        /s/ Jaime W. Marquart
                                        Jaime W. Marquart
                                        Scott M. Malzahn

                                        *Attorneys for Defendant and*
                                        *Counterclaimant VidAngel, Inc.*

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

VIDANGEL'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION