Mark L. Eisenhut, Bar No. 185039
  meisenhut@calljensen.com
Samuel G. Brooks, Bar No. 272107
  sbrooks@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel: (949) 717-3000
Fax: (949) 717-3100

David Quinto, Bar No. 106232
  dquinto@vidangel.com
VIDANGEL, INC.
3007 Franklin Canyon Drive
Beverly Hills, CA 90210-1633
Tel: (213) 604-1777

J. Morgan Philpot (*Pro Hac Vice*)
  mphilpot@vidangel.com
VIDANGEL, INC.
295 W Center St.
Provo, UT 84601
Telephone: (801) 810-8369

Attorneys for Defendant VidAngel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC.; LUCASFILM LTD. LLC; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS. ENTERTAINMENT INC.; MVL FILM FINANCE LLC; NEW LINE PRODUCTIONS, INC.; and TURNER ENTERTAINMENT CO., <br><br>Plaintiff,<br><br>vs.<br><br>VIDANGEL, INC.,<br><br>Defendant. | Case No. 16-cv-04109-AB (PLAx)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING POST-INJUNCTION WILLFULNESS AND VIDANGEL'S "INNOCENT" DMCA VIOLATOR DEFENSE**<br><br>Complaint Filed: June 9, 2016<br>Trial Date: June 11, 2019 |

Rather than trust the jury to decide two of the key issues in this case based on the ample evidence presented to them at trial, Plaintiffs have instead filed a motion for judgment as a matter of law which asks the Court to take the issues from the jury and rule that (1) Defendant VidAngel, Inc. ("VidAngel") willfully infringed Plaintiffs' copyrights after the Court's injunction; and (2) VidAngel did not innocently violate the Digital Millennium Copyright Act ("DMCA"). Given the evidence presented at trial, however, VidAngel submits that in viewing the evidence in the light most favorable to VidAngel, as the Court is required to do when ruling on this motion, the Court cannot find that no reasonable juror could find in VidAngel's favor on these two issues. Therefore, the Court should deny the motion and leave the issues to the jury.

VidAngel presented evidence at trial that would allow a reasonable juror to conclude that notwithstanding the Court's preliminary ruling, it continued to believe that its disc-based service was lawful. VidAngel also presented evidence that it was not defying the injunction, but was instead earnestly working to find a way to comply with the injunction without impacting customers who owned movies or TV shows that were not within the scope of the injunction.

With respect to the DMCA, Plaintiffs identified only three of their works that were added to VidAngel's service after the injunction issued. Because the DMCA violations necessarily occurred *before* a title was tagged and added to VidAngel's catalog, only these three violations (out of 819) would have occurred after the injunction issued. VidAngel offered evidence that these three movies were added inadvertently. Combined with its continued good-faith belief that its conduct did not violate the DMCA, the fact that VidAngel added less than a handful of movies after the injunction does not support judgment as a matter of law that none of the violations were committed innocently.

There is sufficient evidence to support a finding that VidAngel was not willful at any point in time. There is also sufficient evidence to support a finding that VidAngel's violations of the DMCA were all innocent. Plaintiffs are not entitled to judgment as a matter of law. Rather, the jury must decide these issues.

## I. THE EVIDENCE MUST BE VIEWED IN THE LIGHT MOST FAVORABLE TO VIDANGEL

Plaintiffs acknowledge that the Court must deny their motion unless it finds "a reasonable jury would not have legally sufficient evidentiary basis to find for [VidAngel] on th[e] issue[s]." (Pl.'s Mot. for JMOL at 1:16-18). However, Plaintiffs understate their burden on this motion. Judgment as a matter of law is only appropriate "when the evidence presented at trial permits *only one reasonable conclusion*." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (emphasis added). Such a motion "is properly granted *only if no reasonable juror could find in the non-moving party's favor*." *Id.* (citing *El–Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir.2005)) (emphasis added). "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Id.* at 1206 (citing *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir.2000)). "If conflicting inferences may be drawn from the facts, the case must go to the jury." *Id.* at 1206. Where the evidence conflicts, the Court thus cannot substitute its own judgment for the jury's. *Id.*

VidAngel was precluded from offering evidence of *additional* legal advice it received after the Court's injunction order. However, there was ample evidence that VidAngel received advice supporting its good faith belief *before* the injunction, and there is a reasonable basis for arguing that VidAngel continued to reasonably rely on that advice. In particular, VidAngel can argue that it disagreed with the Court's order, appealed the order, and all the while continued to believe that its model was lawful based on prior advice of counsel. A reasonable juror can conclude that VidAngel continued to believe in good faith that its conduct was lawful, and that such a belief was reasonable. If this evidence is viewed in the light most favorable to VidAngel, judgment as a matter of law cannot be entered.

## II. VIDANGEL'S VIOLATION OF THE INJUNCTION DOES NOT PRECLUDE VIDANGEL'S ARGUMENT

Plaintiffs argue that because VidAngel did not immediately pull the plug on its entire service the day the Court issued its injunction, it must be found to have willfully infringed Plaintiffs' copyrights. But the question of whether VidAngel willfully infringed is separate from the question of whether VidAngel violated the Court's order. The Court already found that VidAngel willfully violated its order—and punished VidAngel for contempt—yet the Court held a jury trial on the issue of whether VidAngel willfully infringed Plaintiffs' copyrights.

VidAngel's co-founder, Neal Harmon, specifically testified at trial that the Court's order enjoining VidAngel took VidAngel by surprise and left VidAngel scrambling to find a way to comply with the order by removing just the Plaintiffs' movies from the system, while leaving VidAngel's service up with respect to other works. (Trial Tr. at 532:7-533:5; 533:6-534:18). He testified as follows:

> Q. Okay. Now, there's been some discussion about the time period between the time the injunction came down and the time VidAngel actually shut down. Let me just start with one question. Was it possible for VidAngel to shut its entire operations down as soon as the order came out?
>
> A. **That would have been impossible in a matter of hours, likely.**
>
> Q. Okay. And that would have affected a hundred percent of the content as opposed to just the 35 that was subject to the order?
>
> A. Correct. **And it would have also affected all the people who had owned discs, which at the time of the order was about 23 percent of all of our discs.** And then as people sold some discs back, that group dropped down to 14 percent, but **there about 40,000-ish discs that were owned by people.**
>
> Q. Okay. Did you think about shutting everything down and choose not to?
> A. Yes, we did.
>
> Q. Okay. And then fast forward to December 29th. When you did shut down, you actually shut hundred percent down; is that correct?
> A. That's correct.

(Trial Tr. at 532:7-533:5) (emphasis added).

Mr. Harmon went on to further explain that he did his best to have VidAngel comply promptly with the injunction despite some logistical issues during the Christmas holiday time period, as he consulted with legal and technical advisors:

> Q. Okay. And so why is that? If you could have done that on day one but you didn't do it until a couple of weeks later, why is that?
> A. I think just explaining what happened in the interim would be helpful to understand why it is. The first thing is, is that after receiving an order like this when you've never been in a lawsuit before and having the press start making inquiries and us having a company party, there's a lot going on and it's hard to keep everything straight and to think straight. So I was doing my best to communicate with people. **I was doing my best to meet with the team and instruct the team, after meeting with Mr. Quinto, and then we had a follow-up call with four lawyers. We -- after that, we did all kinds of things in order to prepare the service for what we'd call a surgical shutdown where we would make the 65 percent of the works available and all the owners' works, while shutting down the 35 percent without shutting down the whole service, and --**
>
> Q. Were you ultimately successful in finding a way to shut down surgically?
> A. No, we were not. We were on the verge to. On January 28th we scheduled a meeting with –
>
> Q. You mean December?
> A. Or December 28th. That's right. December 29th was -- was -- so, yeah, I have to step back a second. **We did something that's called asking for a stay. So we filed papers with Judge Birotte and asked him to stay the injunction and gave him reasons why he should stay it.** And then we filed some declarations because I had forgotten to include information in that stay explaining what we call a blackout period where the app stores for Roku and for Apple, they're closed and they won't accept new code updates. **And we needed new code updates in order to smoothly and reasonably transition for -- because we had so many people who owned the discs and our code wasn't accounting for that, the shutdown.**

(Trial Tr. at 533:6 – 534:18) (emphasis added).

VidAngel's in-house counsel, David Quinto's, statements at the hearing on the order to show cause was consistent with Mr. Harmon's testimony: "Our bad, Your Honor. I will take responsibility for this but we didn't anticipate that any injunction would be as

broad as the injunction that issued. We took a little while to figure out all that was required to implement the changes." (Trial Tr. at 828:17-21). Given these explanations for the delay, reasonable jurors could conclude that VidAngel was not intentionally infringing copyrights, but instead was simply trying its best to find a way to comply with the injunction without shutting down its entire business.

Plaintiffs cite *BMG Music v. Perez*, 952 F.2d 318, 319 (9th Cir. 1991) and *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1027 (9th Cir. 1985), but neither of these cases require a finding of willfulness merely because the defendant continued to commit infringing acts after an injunction has issued. In *BMG*, the Court relied on "the Defendant's *admissions at trial* and conduct in violating the court's preliminary injunction" to affirm a finding of willfulness made *after a bench trial*. 952 F.2d at 319 (emphasis added). The determination was made after the fact-finder had weighed all the evidence—including the Defendants' trial testimony. Similarly, in *Transgo* both "the district court and *the jury* [had] rejected the defendants' defense that they innocently infringed in the mistaken belief that [the plaintiff] had abandoned its copyright." *Transgo*, 768 F.2d at 1027. As in *BMG* and *Transgo*, it should be left to the jury—the fact-finder here—to evaluate the evidence presented at trial and to determine whether VidAngel's infringement was willful or not.

### III.   A REASONABLE JUROR COULD CONCLUDE DMCA VIOLATIONS WERE INNOCENT.

To grant Plaintiffs' motion on the DMCA, the Court would have to determine that no reasonable juror could find VidAngel "was not aware and had no reason to believe that its acts constituted a violation" of the DMCA. Fed. R. Civ. P. 50(a)(1); *Torres*, 548 F.3d at 1205-06; 17 U.S.C. § 1203(c)(5)(A). No such determination can be made.

Plaintiffs contend that because "VidAngel's officers Neal Harmon [VidAngel's co-founder] and David Quinto [the general counsel] were aware—and explicitly articulated concerns" about the DMCA, they could not have been innocent. (Pls.' Mot. JMOL at 3:22-4:1). However, this argument overlooks the possibility that the jury may find that

even though they were aware of possible concerns VidAngel affirmatively believed that it was <u>not</u> violating the DMCA. If the jury finds that VidAngel believed it was following the law, it cannot conlude that VidAngel had reason to believe it was violating the law. VidAngel responsibly vetted the legality of its business model and proceeded in good faith, confident in the belief that its business would be lawful and not violate the DMCA.

Indeed, VidAngel hired David Quinto—"one of the top 100 attorneys globally in [the copyright] space"—to provide a "full-fledged legal opinion" as to the legality of VidAngel's business model. (Trial Tr. at 376:24-377:5 and 399:10-13; Tr. Ex. 102). VidAngel relied on Mr. Quinto's written legal opinion that its business model was lawful. (Trial Tr. at 399:10-13 (VidAngel relied on Mr. Quinto's advice); Tr. Ex. 2156). Mr. Quinto analyzed the legal issues—including the DMCA and the Family Movie Act ("FMA")—before he rendered an opinion on VidAngel's legality. (Trial Tr. at 719:19-720:1; 736:3-6). Mr. Quinto consulted with other attorneys about the DMCA issue as well, and they all concluded that the business model was lawful. (Trial Tr. at 719:19-720:1; 736:24-737:21).

Contrary to Plaintiffs' contentions, the fact that VidAngel sought advice of counsel does not preclude a finding of innocence. Rather, it supports such a finding. Because a reasonable juror could conclude that VidAngel honestly and reasonably believed it was following the law, the jury can also conclude that VidAngel was not aware and had no reason to believe that it was violating the DMCA. Plaintiffs' motion for judgment as a matter of law, therefore, must be denied.

Dated: June 17, 2019

CALL & JENSEN
A Professional Corporation
Mark Eisenhut
Samuel G. Brooks

By: */s/ Samuel G. Brooks*
       Samuel G. Brooks

Attorneys for Defendant VidAngel, Inc.