GLENN D. POMERANTZ (SBN 112503)
glenn.pomerantz@mto.com
KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA FROMM YOUNG (SBN 217533)
blanca.young@mto.com
ROSE LEDA EHLER (SBN 296523)
rose.ehler@mto.com
JULIANA YEE (SBN 304564)
juliana.yee@mto.com
STEPHANIE G. HERRERA (SBN 313887)
stephanie.herrera@mto.com
ROWLEY RICE (SBN 313737)
rowley.rice@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC.; LUCASFILM LTD. LLC; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS. ENTERTAINMENT INC.; MVL FILM FINANCE LLC; NEW LINE PRODUCTIONS, INC.; and TURNER ENTERTAINMENT CO., <br><br> Plaintiffs, <br><br> vs. <br><br> VIDANGEL, INC., <br><br> Defendant. | Case No. 2:16-cv-04109-AB (PLAx) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge: Hon. André Birotte Jr. <br><br> Hrg. Date: August 23, 2019 <br> Hrg. Time: 10:00 am <br> Ctrm: 7B <br><br> Filed concurrently: <br> Declaration of Kelly M. Klaus; <br> [Proposed] Order |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 23, 2019, at 10:00 a.m., before the Honorable André Birotte Jr., in Courtroom 7B of the United States Courthouse, 350 West First Street, Los Angeles, California, Plaintiffs Disney Enterprises, Inc. ("Disney"), Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Warner Bros. Entertainment Inc. ("Warner Bros."), MVL Film Finance LLC, New Line Productions, Inc., and Turner Entertainment Co. (collectively, "Plaintiffs") will and hereby do move for a Permanent Injunction restraining Defendant VidAngel, Inc. ("VidAngel") as set forth in the concurrently filed [Proposed] Order.

This Motion is made on the following grounds as explained in the accompanying Memorandum of Points and Authorities and supporting papers: (1) VidAngel's infringement and circumvention caused Plaintiffs to suffer irreparable injuries; (2) the remedies available at law are inadequate to compensate Plaintiffs for their irreparable injuries; (3) the balance of hardships tips decidedly in Plaintiffs' favor; and (4) a permanent injunction will serve the public interest.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Kelly M. Klaus ("Klaus Decl.") and Exhibits thereto; all documents on file in this action; the testimony and evidence presented at trial; and such other evidence or argument that the Court may receive at or before the hearing on this Motion.

DATED: July 12, 2019                    MUNGER, TOLLES & OLSON LLP

                                        By:    /s/ *Kelly M. Klaus*
                                            KELLY M. KLAUS
                                            Attorneys for Plaintiffs

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I. VIDANGEL'S UNLAWFUL CIRCUMVENTION AND INFRINGEMENT HAVE CAUSED, AND UNLESS PERMANENTLY ENJOINED WILL CONTINUE TO CAUSE, PLAINTIFFS TO SUFFER IRREPARABLE INJURIES ................................ 2

II. LEGAL REMEDIES CANNOT ADEQUATELY COMPENSATE PLAINTIFFS FOR THEIR IRREPARABLE INJURIES ................................ 6

III. THE BALANCE OF HARDSHIPS TIPS DECISIVELY FOR PLAINTIFFS ..................................................................................................... 8

IV. A PERMANENT INJUNCTION IS IN THE PUBLIC INTEREST ................ 9

V. THE SCOPE OF THE REQUESTED INJUNCTION IS APPROPRIATE TO PREVENT FUTURE VIOLATIONS OF PLAINTIFFS' RIGHTS ....................................................................................... 10

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Apple Inc. v. Psystar Corp.*,
673 F. Supp. 2d 943 (N.D. Cal. 2009),......................................................6, passim

*BMG Music v. Gonzalez*,
430 F.3d 888 (7th Cir. 2005) ...............................................................................2, 9

*Capitol Records, Inc. v. Thomas-Rasset*,
692 F.3d 899 (8th Cir. 2012) .................................................................................. 1

*Dish Network L.L.C. v. Jimenez*,
No. CV 17-3528-MWF, 2017 WL 8116066 (C.D. Cal. Oct. 17,
2017) ...................................................................................................................10

*Dish Network L.L.C. v. Whitcomb*,
No. 11-CV-0333 W(RBB), 2011 WL 1559825 (S.D. Cal. Apr. 25,
2011) ..................................................................................................................... 9

*Disney Enters., Inc. v. Delane*,
446 F. Supp. 2d 402 (D. Md. 2006) ...................................................................5, 8

*Disney Enters., Inc. v. Redbox Automated Retail, LLC*,
336 F. Supp. 3d 1146 (C.D. Cal. 2018).............................................................4, 9

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ...................................................................... 1, 2, 4, 9

*eBay, Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ..............................................................................................2

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
915 F. Supp. 2d 1138 (C.D. Cal. 2012)................................................................4

*Fox Television Stations, Inc. v. FilmOn X LLC*,
966 F. Supp. 2d 30 (D.D.C. 2013)....................................................................3, 4

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949) .............................................................................................. 1

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 2, passim

*Oracle Am., Inc. v. Google LLC*,
  886 F.3d 1179 (Fed. Cir. 2018) .................................................................... 3

*Realnetworks, Inc. v. DVD Copy Control Ass'n.*,
  641 F. Supp. 2d 913 (N.D. Cal. 2009) ......................................................... 9

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ........................................................................ 4

*Triad Sys. Corp. v. Se. Exp. Co.*,
  64 F.3d 1330 (9th Cir. 1995) ........................................................................ 8

*Warner Bros. Entm't, Inc. v. WTV Sys.*,
  824 F. Supp. 2d 1003 (C.D. Cal. 2011) ............................................... 3, 4, 6

*WPIX, Inc. v. ivi, Inc.*,
  691 F.3d 275, 285-86 (2d Cir. 2012) ........................................................ 3, 9

**FEDERAL STATUTES**

17 U.S.C. § 117(c) ................................................................................................ 8

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

The Court has held VidAngel liable and a jury has awarded statutory damages for VidAngel's illegal circumvention of technological protection measures ("TPMs") and its willful infringement arising from its unlawful copying and streaming of more than 800 of Plaintiffs' most popular and valuable movies and television shows. Yet VidAngel has been anything but contrite for its mass infringement of Plaintiffs' works. After first disregarding this Court's preliminary injunction order for 17 days, VidAngel then attempted to evade this Court's jurisdiction and have a different court enjoin Plaintiffs from seeking to enforce the injunction, which VidAngel planned to violate. To this day, VidAngel insists that its legal interpretation is right and that this Court and the Ninth Circuit both got it wrong.[1] Even if VidAngel could pay the $62.4 million statutory damages award it owes Plaintiffs, money damages would not be enough to stop VidAngel's demonstrated intent to violate Plaintiffs' rights.

The Court preliminarily enjoined VidAngel's infringement and circumvention, Dkt. 144 ("PI Order"), and the Ninth Circuit affirmed that injunction, *Disney Enters., Inc. v. VidAngel, Inc.* ("*VidAngel*"), 869 F.3d 848 (9th Cir. 2017). Plaintiffs respectfully request that the Court now permanently enjoin VidAngel to protect Plaintiffs' rights against future violations. The Court has broad authority to provide such relief, particularly in light of VidAngel's repeated disregard for Plaintiffs' rights and for the law. *See Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012) ("[A] district court has authority to issue a broad injunction in cases where 'a proclivity for unlawful conduct has been shown.'" (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949))).

---

[1] VidAngel's June 27, 2019 blog post tries to spin this Court's thoughtful comments during and after trial as demonstrating that "the judge who made the ruling himself isn't 100% about his own ruling." Klaus Decl., Ex. A.

Because VidAngel "could immediately return to its prior ways," and has demonstrated an intent to do so, a permanent injunction is necessary "'to ensure that the misconduct does not recur as soon as the case ends.'" *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.* ("*Grokster*"), 518 F. Supp. 2d 1197, 1221-22 (C.D. Cal. 2007) (quoting *BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005)). Plaintiffs therefore respectfully request that the Court, consistent with the preliminary injunction, permanently enjoin VidAngel, directly or through third parties, from circumventing TPMs that protect Plaintiffs' works and from infringing Plaintiffs' copyrights.

## ARGUMENT

Plaintiffs satisfy all the requirements for a permanent injunction: They have suffered irreparable injury; remedies available at law are inadequate to compensate for that injury; the balance of hardships tips in their favor; and an injunction is in the public interest. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### I. VIDANGEL'S UNLAWFUL CIRCUMVENTION AND INFRINGEMENT HAVE CAUSED, AND UNLESS PERMANENTLY ENJOINED WILL CONTINUE TO CAUSE, PLAINTIFFS TO SUFFER IRREPARABLE INJURIES

This Court previously found—and the Ninth Circuit agreed—that, absent an injunction, VidAngel's illegal circumvention of TPMs, and its illegal copying and streaming of Plaintiffs' movies and television shows, would likely cause irreparable harm to Plaintiffs' ability to control how, when, and through which channels their content is distributed; to their respective "windowing" business models; and to their goodwill and negotiating leverage with licensees. *VidAngel*, 869 F.3d at 865-66; PI Order at 16-18. Plaintiffs have suffered, and will continue to suffer, these and other irreparable harms unless the Court permanently enjoins VidAngel from circumventing TPMs that protect Plaintiffs' works and from infringing Plaintiffs' copyrights.

First, as this Court has already held, VidAngel interferes with Plaintiffs' "basic right to control how, when and through which channels consumers can view their copyrighted works." PI Order at 17. VidAngel *does not have a license* to copy or stream Plaintiffs' works. Whenever a service operates "without the normal licensing restrictions imposed by Plaintiffs, [it] interfere[s] with Plaintiffs' ability to control the use and transmission of their Copyrighted works, thereby causing irreparable injury." *Id.* (quoting *Warner Bros. Entm't, Inc. v. WTV Sys.* ("*Zediva*"), 824 F. Supp. 2d 1003, 1012 (C.D. Cal. 2011)); *see also, e.g.*, *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285-86 (2d Cir. 2012) ("streaming copyrighted works without permission" irreparably harms the value of the copyrighted works and the copyright owners' "control over their product"); *Fox Television Stations, Inc. v. FilmOn X LLC* ("*FilmOn*"), 966 F. Supp. 2d 30, 49-50 (D.D.C. 2013) (operation of unauthorized streaming service threatened irreparable harm to, *inter alia*, copyright holders' ability to control distribution of their copyrighted content); *accord Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1208 (Fed. Cir. 2018) ("[A] copyright holder has the exclusive right to determine when, whether and in what form to release the copyrighted work … whether on its own or via a licensing agreement." (quotation marks and citations omitted)).

At the preliminary injunction stage, Plaintiffs' unrebutted evidence showed that their ability to control the use and distribution of their works is critical to their ability to earn a return on their substantial investments in creating content. Dkt. 28, Declaration of Tedd Cittadine ISO Pls.' Mot. for Preliminary Injunction ("Cittadine Decl.") ¶¶ 7-8. Plaintiffs presented still more unrebutted evidence on this point at trial, including the testimony of Tracy Myers, Vice President of Business Affairs for Warner Bros.; Chris Oldre, Executive Vice President of Global Accounts, Deal Analysis, and Digital Home Entertainment at Disney; and the expert testimony of Robin Russell, a former executive of Walt Disney Studios and Sony Pictures Entertainment with more than 35 years of industry experience. *See* 6/11/19 Trial Tr.

at 255:10-25, 260:15-261:4 (Myers); 6/13/19 Trial Tr. at 448:13-19, 449:19-450:17, 460:2-16 (Russell); *see also* 6/13/19 Trial Tr. at 473:20-474:11 (Oldre).[2] This evidence establishes that VidAngel, by streaming Plaintiffs' movies and television shows without a license, has irreparably harmed—and if left unrestrained will continue harming—Plaintiffs' exclusive right to control the distribution of their works and their ability to recoup their substantial investments in the works they create.

Second, as this Court has already held, VidAngel threatens harm to Plaintiffs' relationships and goodwill with authorized distributors. PI Order at 17. This is a quintessential form of irreparable harm. *See VidAngel*, 869 F.3d at 866 (affirming this Court's holding that "the loss of goodwill" is an irreparable harm); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of … goodwill certainly supports a finding of the possibility of irreparable harm."); *Disney Enters., Inc. v. Redbox Automated Retail, LLC* ("*Redbox*"), 336 F. Supp. 3d 1146, 1157 (C.D. Cal. 2018) (evidence that unauthorized distribution of plaintiffs' copyrighted works was "damaging [their] relationships with [] licensees" was "sufficient to warrant injunctive relief"); *FilmOn*, 966 F. Supp. 2d at 49-50 (unauthorized streaming service threatened irreparable harm to copyright owners relationships and goodwill with licensees); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012) (same); *Zediva*, 824 F. Supp. 2d at 1012 (same).

In support of their motion for a preliminary injunction, Plaintiffs submitted unrebutted evidence establishing that VidAngel's service threatened irreparable harm to Plaintiffs' goodwill and negotiating relationships with licensees. Cittadine Decl. ¶¶ 18-22. That showing was further bolstered by Plaintiffs' presentation at

---

[2] For the Court's convenience, excerpts of all trial transcript pages cited herein are available at Exhibit I to the Klaus Declaration.

1 trial, including unrebutted evidence of a licensee complaint about VidAngel, and the
2 testimony of Mr. Oldre regarding how unlicensed offerings of Disney's content
3 harm its goodwill and relationships with authorized licensees. *See, e.g.*, 6/13/19
4 Trial Tr. at 475:6-478:22 (Oldre); Klaus Decl., Ex. B.

5       Third, VidAngel has harmed, and threatens to further harm, Plaintiffs' ability
6 to secure and protect their content in the online environment. This, too, is
7 irreparable harm. *See, e.g.*, *Grokster*, 518 F. Supp. 2d at 1218-19 (explaining that
8 online piracy uniquely and irreparably exposes the copyright owner to further
9 infringement); *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md.
10 2006) (risk of further infringements constituted irreparable injury warranting
11 permanent injunction).

12       Plaintiffs presented unrebutted evidence both in support of their motion for a
13 preliminary injunction and at trial showing that unlicensed online distribution carries
14 with it a heightened risk of piracy because the Internet facilitates the ability to
15 exploit copyrighted content on a mass scale. Cittadine Decl. ¶ 24. Plaintiffs require
16 licensees to employ specified security measures to prevent piracy. *Id.* ¶ 25;
17 6/11/2019 Trial Tr. at 219:23-220:4 (Schumann) ("[A]s part of the licensing
18 contract, there's a big addendum that talks about how you have to protect the
19 content and the rules of that and, you know, the audit rights."). Because VidAngel
20 streams Plaintiffs' works without negotiating a license, Plaintiffs are deprived of
21 their right to impose those terms on VidAngel. Cittadine Decl. ¶ 25. The
22 unrebutted evidence at trial showed that VidAngel's content protection measures fell
23 far short of Plaintiffs' customary content protection requirements. *See* 6/11/2019
24 Trial Tr. at 219:23-220:12 (Schumann) (testifying that VidAngel's content
25 protection measures were "just a tiny fraction" of what Plaintiffs require of
26 authorized licensees). VidAngel has jeopardized, and absent an injunction will
27 continue to jeopardize, Plaintiffs' content and to harm Plaintiffs' relationships with
28 licensees who are required to abide by security requirements to which VidAngel is

not bound.  Cittadine Decl. ¶ 25; 6/13/19 Trial Tr. at 479:4-10 (Oldre) ("So when it's ripped and taken and exposed it … further exposes potential harm for us because it then can be pirated off those streams.").

Finally, VidAngel has harmed, and threatens to further harm, Plaintiffs' relationships with customers by confusing consumers that VidAngel is engaged in lawful conduct.  *See Zediva*, 824 F. Supp. 2d at 1013 (finding that the Zediva service threatened "to create incorrect but lasting impressions with consumers about what constitute[d] lawful video on demand exploitation" of copyrighted works). From before this lawsuit started through the present day, VidAngel has insisted that its unlicensed use of Plaintiffs' works is legal.  *See, e.g.*, Klaus Decl., Exs. A, G. But VidAngel's service is not legal.  VidAngel thus threatens to cause further consumer confusion if it resumes violating Plaintiffs' rights.  *See* 6/13/19 Trial Tr. at 478:23-479:3 (Oldre).

## II. LEGAL REMEDIES CANNOT ADEQUATELY COMPENSATE PLAINTIFFS FOR THEIR IRREPARABLE INJURIES

Legal remedies cannot adequately compensate Plaintiffs for the injuries they have suffered, and absent an injunction will continue to suffer, as a result of VidAngel's piracy.

First, "the same evidence and rationale put forth by [Plaintiffs] to show irreparable harm support[s] the conclusion that an award of damages would be inadequate, simply because th[ose] harm[s] … [are] difficult, if not impossible, to quantify."  *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949-50 (N.D. Cal. 2009), *aff'd in relevant part*, 658 F.3d 1150, 1152-53 (9th Cir. 2011); *see also Grokster*, 518 F. Supp. 2d at 1219 (explaining that the "adequate remedy at law analysis parallels that performed for irreparable harm").

Second, even if monetary damages could adequately compensate Plaintiffs, VidAngel will be unable to pay most (if any) of the jury's $62.4 million statutory damages award.  "Damages are no remedy at all if they cannot be collected, and

most courts sensibly conclude that a damage judgment against an insolvent defendant is an inadequate remedy." *Grokster*, 518 F. Supp. 2d at 1219-20 (citation omitted). VidAngel's own evidence and argument establish that it cannot pay an award as large as $62 million. VidAngel's counsel told the jury in closing argument that VidAngel had "$2 million in the bank," but has "so many debts that [it's] $702,000 in debt" and "[doesn't] have the ability to pay much at all." 6/17/19 Trial Tr. at 1049:5-9. Similarly, VidAngel's counsel told the Bankruptcy Court that if the award in this action was "over and above what VidAngel projects it can afford to pay over time"—$7 million over ten years, as projected in VidAngel's Proposed Chapter 11 Plan—the case would have to be converted to a Chapter 7 liquidation.[3] *See* Klaus Decl., Ex. D at 78:7-12; *id.*, Ex. E at 5.

VidAngel has been in chapter 11 bankruptcy proceedings since October 18, 2017. Dkt. 229. VidAngel's most recent Monthly Operating Report to the bankruptcy court shows, among other things:

- In May 2019, VidAngel had negative net cash flow of $402,027, and from the filing of the petition through May 31, 2019, net cash flow was negative $1,667,445, Klaus Decl., Ex. F at 2;

- In May 2019, VidAngel had negative net income of $501,787, and from the filing of the petition through May 31, 2019, net income was negative $1,955,437, *id.* at 18; and

- Since filing the petition, VidAngel's total current assets have declined from $5,930,973 to $3,775,773, and its total assets have declined from $6,107,971 to $3,845,868, *id.* at 17.

Given its current financial situation, VidAngel obviously will not be able to pay Plaintiffs all the damages it owes. Legal remedies will thus be inadequate to

---

[3] In light of VidAngel's own projections and the jury's statutory damages award, Plaintiffs have moved to convert VidAngel's Chapter 11 proceedings to a Chapter 7 case. Klaus Decl., Ex. C.

compensate Plaintiffs.  *See Psystar*, 673 F. Supp. 2d at 949 (concluding that legal remedies were inadequate where it was "highly suspect" that infringer would be able to pay its stipulated damages given its financial condition and bankruptcy filing).

Third, "monetary damages would not prevent [VidAngel] from continuing to infringe [Plaintiffs'] copyrights and violate the DMCA in the future, and will not prevent third-parties from infringing [Plaintiffs] copyrights." *Id.* at 950.  VidAngel has made no secret of the fact that it wants to offer Plaintiffs' content to its customers, and it has demonstrated a willingness to do so in violation of this Court's orders, *see* Dkt. 175 (civil contempt order).  There is thus a real risk that, without a permanent injunction, VidAngel will violate, and cause others to violate, Plaintiffs' rights in the future.

Moreover, as both Mr. Schumann and Mr. Oldre explained in their unrebutted trial testimony, 6/11/2019 Trial Tr. at 219:23-220:4 (Schumann); 6/13/19 Trial Tr. at 479:4-10 (Oldre), VidAngel's conduct has exposed Plaintiffs' content to the risk of further piracy.  Plaintiffs cannot feasibly "track and proceed against" every infringer who may have obtained Plaintiffs' content from VidAngel's service; "[t]he only realistic method for remedying such future harm resulting from [VidAngel's infringement and circumvention] is by way of a permanent injunction." *Grokster*, 518 F. Supp. 2d at 1220; *Delane*, 446 F. Supp. 2d at 408 (legal remedies are inadequate where "further infringements are a continuing threat").

### III. THE BALANCE OF HARDSHIPS TIPS DECISIVELY FOR PLAINTIFFS

The irreparable harm to Plaintiffs absent an injunction far outweighs the impact to VidAngel of being permanently enjoined from its illegal activities. Plaintiffs have already suffered and, absent an injunction would continue to suffer, irreparable harm from VidAngel's unlicensed offerings.  By contrast, VidAngel "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th

Cir. 1995), *superseded on other grounds by* 17 U.S.C. § 117(c); *Psystar*, 673 F. Supp. 2d at 950 ("Since [small start-up defendant] does not (and cannot) claim any *legitimate* hardships as a result of being enjoined from committing unlawful activities, and [plaintiff] would suffer irreparable and immeasurable harms if an injunction were not issued, this factor weighs strongly in favor of [the] motion."). Because VidAngel "could immediately return to its prior ways," an injunction "'remains appropriate to ensure that the misconduct does not recur as soon as the case ends.'" *Grokster*, 518 F. Supp. 2d at 1221-22 (quoting *BMG Music*, 430 F.3d at 893); *see also Redbox*, 336 F. Supp. 3d at 1158 (rejecting argument that cessation of infringing conduct mooted the need for an injunction because "[a]bsent injunctive relief, it seems quite possible that [the alleged infringer] would begin [its infringing activity]").

### IV.   A PERMANENT INJUNCTION IS IN THE PUBLIC INTEREST

As the Ninth Circuit explained in affirming the preliminary injunction, "'the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming' and motion pictures." *VidAngel*, 869 F.3d at 867 (quoting *WPIX*, 691 F.3d at 287); *Psystar*, 673 F. Supp. 2d at 950 ("[T]he public receives a benefit when the legitimate rights of copyright holders are vindicated."). In addition, the public has a "clear interest in retaining access to [Plaintiffs'] works…. some of the world's most popular motion pictures and television shows." *VidAngel*, 869 F.3d at 867. The evidence at trial reinforced the public value of the works at issue, and the importance of protecting Plaintiffs' copyrights in those works. *See, e.g.*, 6/12/19 Trial Tr. at 306:23-307:13 (Prof. Barnett testifying that "in the long run the consumers would lose [from VidAngel's conduct] because the studios wouldn't have an incentive to invest in additional content").

The public also has "a strong interest in enforcing anti-piracy legislation, such as the DMCA." *Dish Network L.L.C. v. Whitcomb*, No. 11-CV-0333 W(RBB),

-9-

2011 WL 1559825, at *4 (S.D. Cal. Apr. 25, 2011); *see also Realnetworks, Inc. v. DVD Copy Control Ass'n.*, 641 F. Supp. 2d 913, 943 (N.D. Cal. 2009) ("By making it a DMCA violation to distribute products that enable consumers to override copyright owner preferences against unauthorized copying, Congress determined that the public interest is best served by outlawing such products.").

VidAngel's "piracy undermines the integrity of the copyright system." *Dish Network L.L.C. v. Jimenez*, No. CV 17-3528-MWF (JPRx), 2017 WL 8116066, at *5 (C.D. Cal. Oct. 17, 2017). Enforcing the Copyright Act and the DMCA fulfills Congress's goals and serves the public interest by "ensur[ing] that the public will continue to benefit from the creative fruits of [Plaintiffs'] labor." *Psystar*, 673 F. Supp. 2d at 950 (granting motion for permanent injunction).

An injunction that makes permanent the relief prescribed in the Court's preliminary injunction is well tailored to prevent irreparable harm to Plaintiffs and protect the public interest.

## V. THE SCOPE OF THE REQUESTED INJUNCTION IS APPROPRIATE TO PREVENT FUTURE VIOLATIONS OF PLAINTIFFS' RIGHTS

Plaintiffs are requesting that the Court enter substantially the same injunction it has already issued, and which the Ninth Circuit has already affirmed.

Plaintiffs are requesting only one additional restriction: that in addition to enjoining VidAngel from streaming, transmitting or otherwise publicly performing Plaintiffs' copyrighted works, the Court also enjoin VidAngel from *facilitating any third party* in engaging in the same activities. VidAngel has stated its intent to transfer its intellectual property assets (including the technology underlying its infringing service) to a newly created Utah entity called Skip Foundation, Inc. ("Skip"), and has publicly stated that its intent is for Skip to make its "filtering assets" available to "the entire world" "under copyleft and Wikipedia style

licenses."[4] Klaus Decl., Ex. G. The website for the Skip Foundation states expressly that VidAngel plans to "donate" its "[d]atabase of TV shows and movies," which includes Plaintiffs' copyrighted works. *Id.*, Ex. J. This is a transparent attempt to ensure that third parties who are not bound by the injunction can continue engaging in the very infringing conduct that Plaintiffs were forced to litigate through a jury trial in this action. The Court should not countenance this brazen effort to evade its authority and injunction.

If past is prologue, VidAngel undoubtedly will repeat its unsuccessful argument that the Court should create a carve-out for VidAngel's so-called "stream-based" service. *See* Dkts. 182, 187, 200, 265. The Court has repeatedly declined to create such a carve-out, *see* Dkts. 198, 207, 225, 324, and there is no basis for such an exclusion now. VidAngel's unlicensed use of Plaintiffs' works on the stream-based service would infringe Plaintiffs' exclusive rights under the Copyright Act just as VidAngel's use on the disc-based service infringed those rights: The stream-based service still involves the making of unauthorized copies of movies on VidAngel's servers and the unauthorized public performance of those movies. *See, e.g.*, Dkt. 182-1, Quinto Decl. ISO VidAngel's "Motion to Clarify or Construct Preliminary Injunction" ("Quinto Decl."), ¶¶ 5-7; *see also* Dkt. 188, Plaintiffs' Opp. to VidAngel's Motion to Clarify or Construct Preliminary Injunction, at 8-12. Accordingly, any carve-out would be inappropriate and unwarranted.

---

[4] VidAngel executed a series of agreements to effectuate this transfer on June 10, 2019—the eve of the jury trial in this action—for no monetary consideration. *See* Klaus Decl., Ex. H at 18-34. Plaintiffs have brought this and other attempted transfers to the attention of the Bankruptcy Court and are seeking the emergency appointment of a Chapter 11 Trustee to protect the interests of the estate and its creditors. *See generally id.*

# CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court grant this motion for a permanent injunction and enter the [Proposed] Injunction Order filed concurrently herewith.

DATED: July 12, 2019

MUNGER, TOLLES & OLSON LLP

By: */s/ Kelly M. Klaus*
KELLY M. KLAUS
Attorneys for Plaintiffs