Mark L. Eisenhut, Bar No. 185039
 meisenhut@calljensen.com
Samuel G. Brooks, Bar No. 272107
 sbrooks@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100

David Quinto, Bar No. 106232
 dquinto@vidangel.com
VIDANGEL, INC.
3007 Franklin Canyon Drive
Beverly Hills, CA 90210-1633
Tel:   (213) 604-1777

Attorneys for Defendant VidAngel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC.; LUCASFILM LTD. LLC; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS. ENTERTAINMENT INC.; MVL FILM FINANCE LLC; NEW LINE PRODUCTIONS, INC.; and TURNER ENTERTAINMENT CO., | Case No.  16-cv-04109-AB (PLAx) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VIDANGEL, INC.'S MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE REMITTITUR** |
| Plaintiff, | |
| vs. | Date:      January 17, 2020 Time:      10:00 a.m. Courtroom: 7B |
| VIDANGEL, INC., | |
| Defendant. | |
| | Complaint Filed:  June 9, 2016 Trial Date:      June 11, 2019 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................. 1

II. BACKGROUND ................................................................................... 1

III. LEGAL STANDARD AND ARGUMENT ........................................... 4

    A. Allowing Evidence of the Contempt Ruling Was Prejudicial Error ........................................................................................... 4

    B. Excluding Advice of Counsel Evidence Was Prejudicial Error ........................................................................................... 5

    C. Admission of Redfox/AnyDVD Evidence Was Prejudicial Error ........................................................................................... 6

    D. Admission of Testimony by Robin Russell Was Prejudicial Error ........................................................................................... 7

    E. Preclusion of Witness Mark Fleming Was Prejudicial Error ......... 8

    F. The Court's Willfulness Jury Instruction Was Prejudicially Erroneous .................................................................................... 8

    G. Faulty Instructions on Punitive Statutory Damages Were Prejudicial ................................................................................ 10

    H. Faulty Instructions on the Statutory Damage Factors Were Prejudicial ................................................................................ 11

    I. Instructions on DMCA Damages Were Erroneous and Prejudicial ................................................................................ 13

    J. Instructions Regarding Innocent DMCA Violations Were Erroneous .................................................................................. 13

    K. Faulty Instruction on Innocent Copyright Infringement was Prejudicial ................................................................................ 14

    L. The Court Erred in Responding to the Jury's Note ..................... 14

    M. The Court Made an Error of Law Resolving the Fair Use Defense ...................................................................................... 15

    N. The Willfulness Finding Is Against the Clear Weight of ohe Evidence .................................................................................... 17

VID02-02:2603923_1:10-21-19
- i -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VIDANGEL, INC.'S MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE REMITTITUR

## TABLE OF CONTENTS (cont'd)

Page

O.   The Damages Award Is Against the Clear Weight of the
     Evidence ........................................................................................22

P.   The Damages Award Is Excessive .................................................24

Q.   Cumulative Prejudice ...................................................................25

1

## TABLE OF AUTHORITIES

2

Page

3

### FEDERAL CASES

4

*Adobe Systems Inc. v. Feather*,

5

895 F. Supp. 2d 297 (D. Conn. 2012) .......................................................... 13

6

*Agence France Presse v. Morel*,

7

No. 10-cv-2730 (AJN), 2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014) .................... 13

8

*Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*,

9

770 F. Supp. 1014 (E.D. Pa. 1991) .......................................................... 14

10

*Authors Guild v. Google, Inc.*,

11

804 F.3d 202 (2d Cir. 2015) ................................................................. 17

12

*C.I.T. Corp. v. U.S.*,

13

150 F.2d 85 (9th Cir. 1945) .................................................................. 9

14

*Campbell v. Acuff-Rose Music, Inc.*,

15

510 U.S. 569 (1994) .................................................................. 15, 16, 17

16

*Coach, Inc. v. O'Brien*,

17

No. 10 CIV. 6071 JPO JLC, 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012) ............. 11

18

*Coogan v. Avnet, Inc.*,

19

No. CV040621PHXSRB, 2005 WL 2789311 (D. Ariz. Oct. 24, 2005) .................... 14

20

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,

21

95 F.3d 1422 (9th Cir. 1996) ................................................................. 24

22

*Erickson Productions, Inc. v. Kast*,

23

921 F.3d 822, 833 (9th Cir. 2019) ................................................... 9, 18, 22

24

*Golan v. FreeEats.com, Inc.*,

25

930 F.3d 950 (8th Cir. 2019) ................................................................. 11

26

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,

27

315 F. Supp. 2d 511 (S.D.N.Y. 2004) ....................................................... 23

28

CALL & JENSEN

1

## TABLE OF AUTHORITIES (cont'd)

2

<u>Page</u>

3

*Harper & Row Publishers, Inc. v. Nation Enter.*,

4

   471 U.S. 539.................................................................................................16

5

*Hetzel v. Prince William County, Va.*,

6

   523 U.S. 208 (1998)........................................................................................24

7

*Hultman v. Tevis*,

8

   82 F.2d 940 (9th Cir. 1936)............................................................................22

9

*Malibu Media, LLC v. Reeves*,

10

   No. 1:12-CV-00841-SEB, 2013 WL 5487424 (S.D. Ind. Sept. 27, 2013)................12

11

*Miller v. Hambrick*,

12

   905 F.2d 259 (9th Cir. 1990)..........................................................................11

13

*Moist Cold Refrigerator Co. v. Lou Johnson Co.*,

14

   249 F.2d 246 (9th Cir. 1957)..........................................................................17

15

*Molski v. M.J. Cable, Inc.*,

16

   481 F.3d 724 (9th Cir. 2007)..........................................................................24

17

*Montgomery Ward & Co. v. Duncan*,

18

   311 U.S. 243 (1940).......................................................................................17

19

*Obrey v. Johnson*,

20

   400 F.3d 691 (9th Cir. 2005)........................................................................4, 8

21

*Oracle Corp. v. SAP AG*,

22

   765 F.3d 1081 (9th Cir. 2014)........................................................................24

23

*Peer Int'l Corp. v. Pausa Records, Inc.*,

24

   909 F.2d 1332 (9th Cir. 1990)........................................................................23

25

*RCA/Ariola Intn'l, Inc. v. Thomas & Grayston Co.*,

26

   845 F.2d 773 (8th Cir. 1988)..........................................................................10

27

*Rinker v. Napa County*,

28

   724 F.2d 1352 (9th Cir. 1983)........................................................................25

# TABLE OF AUTHORITIES (cont'd)

Page

*Ruvalcaba v. City of Los Angeles*,

    64 F.3d 1323 (9th Cir. 1995)..............................................................................4

*Sony Corp. of Am. v. Universal City Studios, Inc.*,

    464 U.S. 417 (1984) ........................................................................................17

*Tu v. TAD Sys. Tech. Inc.*,

    No. 08-CV-3822 (SLT)(RM), 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009) ..........13

*Williamson v. U.S.*,

    207 U.S. 425 (1908) ........................................................................................22

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,

    227 F.3d 1110 (9th Cir. 2000)........................................................................17

*Yurman Studio, Inc. v. Castaneda*,

    No. 07 CIV. 1241 (SAS), 2008 WL 11397766 ........................................................11

## FEDERAL STATUTES

17 U.S.C. § 107 ...................................................................................................15

17 U.S.C. § 107(1) ..............................................................................................16

17 U.S.C. § 107(3) ..............................................................................................17

17 U.S.C. § 110(11) ............................................................................................16

17 U.S.C. § 401(d) ..............................................................................................14

17 U.S.C. § 405(b) ..............................................................................................14

17 U.S.C. § 504(c)(1)....................................................................................11, 22

17 U.S.C. § 504(c)(2)..........................................................................................14

17 U.S.C. § 506(a)(1) ...........................................................................................9

17 U.S.C. § 1203(c)(3).........................................................................................22

17 U.S.C. § 1204(a)...............................................................................................9

## FEDERAL RULES

Fed.R.Civ.P. 59(a)(1)(A) .......................................................................................4

## I.      INTRODUCTION

In this jury trial for copyright infringement and DMCA violations, VidAngel was hit with "one of the highest per-work judgments ever."[1] The jury severely punished VidAngel (hereinafter "VA") even though no previous case had ever considered whether its activities were protected by the Family Movie Act (the "FMA"), and notwithstanding VA had notified Plaintiffs and others of its activities before its public launch and received no objections for more than a year. [Quinto Dec. ¶ 3]. Remarkably, Plaintiffs obtained enormous statutory damages awards without offering any evidence they had lost profits or suffered any other actual damages. Instead, with the Court's endorsement they inflamed the jury with unsupported speculation that VA threatened the very existence of the movie industry, and the livelihoods of everyone involved. VA is entitled to a new trial free of the errors that so tainted the trial.

## II.     BACKGROUND

After VA created a technology making it easy for individuals and families to conveniently filter movies in the privacy of their homes—seemingly in compliance with the FMA—Plaintiffs schemed to coopt this court in an effort to destroy VA.

**Prelude to the Parties' Dispute**. VA was incorporated in October 2013 by a group of adult brothers who wanted to enjoy popular movies with their families without being exposed to the profanity, violence, and other mature content that is often prevalent in such movies. By early 2014, VA had developed a technology by which tech-savvy customers could filter content streamed by Google through YouTube using a Java-script API. VA abandoned that method after receiving a cease-and-desist letter from YouTube accusing VA of violating its terms and conditions. VA was, however, invited to participate in an alpha test of Google's Chromecast device, and developed an application with outstanding test results. However, the launch was stymied after Google removed the functionality that allowed VA to filter, citing "legal reasons." VA again

---

[1]  *See*  https://www.latimes.com/business/hollywood/la-fi-ct-VA-piracy-judgment-20190617-story.html (accessed Oct. 17, 2019).

1    tried to make its service work through Google after an executive at Google Play (who

2    was apparently unaware of the Chromecast fiasco) reached out to discuss a potential

3    collaboration, but that also fell through when he was directed to cease discussions with

4    VA.[2] [ECF 43, N. Harmon Dec. at 6:6-9:1].

5         After these repeated frustrations, VA looked for a legal way to provide a filtering

6    service that would not be subject to outside interference. In August 2014, VA engaged

7    legal counsel to provide advice.  In October 2014, VA developed its "Disc-Based

8    System." After thoroughly investigating the material facts and law, legal counsel

9    provided an oral opinion approving the Disc-Based System in late 2014, and followed it

10   with a February 2015 opinion letter thoroughly memorializing his analysis and

11   conclusions. [TT 718:7-720:8, Tr. Exh. 2156]. In January 2015 VA initiated testing

12   with a small number of users, and as word of VA's highly customizable filtering service

13   spread,[3] the number of individuals asking to participate in testing grew. By summer

14   2015 VA was preparing in earnest for a public launch. Intent on complying with the law

15   and hoping to avoid conflict, on July 23, 2015, VA notified the major studios and

16   networks of its service by letter. VA thoroughly explained its purpose, methods, and

17   reasoning as to why it believed it was lawful. [See Quinto Dec. ¶ 9, Trial Exhibit 43]. It

18   also offered to answer "questions concerning VA's technology or business model," and

19   asked if any recipients disagreed with its conclusion that the technology "fully complies

20   with the Copyright Act." [Id.]. Plaintiffs strategized not to respond, and after a year of

21   silence (and secret plotting), Plaintiffs filed a complaint on June 9, 2016, but delayed

22   moving for a preliminary injunction. The hearing on that motion was held November

23

24   ────────────

25   [2] The Court erroneously barred VA from calling the Google Play executive, Mark
     Fleming, as a witness, notwithstanding it permitted Plaintiffs to offer "expert"
26   testimony that Google would not have bowed to the studios if there were a market in
     filtered streaming. [See TT 314:11-314:18].

27   [3] The service allowed customers to skip specific scenes and mute specific audio. For
     example, one viewer might choose to filter only a curse word from a movie, while
28   another might choose to filter nudity or violence.

CALL &
JENSEN

14, 2016, more than 5 months after the complaint, and nearly 16 months after VA's letters to the studios.

On the night of December 12, 2016, the Court issued a preliminary injunction order requiring Plaintiffs to post a bond in the amount of $250,000. [ECF 144 at 22]. The injunction took effect on December 15, 2016, after Plaintiffs posted the bond.[4] [ECF 163]. In the interim, on December 14, 2016, VA filed an emergency application to stay enforcement. [ECF 147]. In support of that request, VA explained that immediate compliance would require it to shut down completely, even though the order was limited to Plaintiffs' movies, and asked for a reasonable time to achieve compliance in an orderly manner. [ECF 158, N. Harmon Dec.]. On December 22, 2016, Plaintiffs sought an order to show cause why VA should not be held in contempt, [ECF 161], which VA promptly opposed. [ECF 164]. The Court did not act immediately either on VA's request for a stay, or on Plaintiffs' request for an OSC re contempt. On December 29, 2016, the Court denied the stay, [ECF 166], prompting VA to immediately shut down its business entirely and notify the Court of its full compliance with the order. [ECF 167]. Even though there was no need to compel VA to comply at that point, the Court then set a hearing on Plaintiffs' application for an OSC re Contempt, [ECF No. 168], found VA had willfully violated the preliminary injunction, and punished VA with contempt sanctions. [ECF No. 175].

After the preliminary injunction issued, VA's counsel, David Quinto, continued to stand by his advice that the disc-based service was legal, [TT 841:19-841:22], and multiple counsel advised VA orally that it would not be held in contempt if it did not

---

[4] At trial, the Court erroneously allowed Plaintiffs to argue that the injunction took effect on December 12, before they posted security, and that VA violated the injunction by not pulling the plug the same day the order issued. Worse still, Plaintiffs told the jury VA violated the order with respect to all 819 titles in issue at trial, even though the complaint identified only 80 works, and many of the 819 works were not put at issue until after new Plaintiffs joined the lawsuit more than ten months later. [See ECF No. 228 (First Amended Complaint, adding new plaintiffs); Quinto Dec. ¶ 14]. VA, on the other hand, was precluded from arguing that the injunction had not yet taken effect when they applied for an emergency stay.

shut down its entire business while it searched for a way to comply in an orderly manner and while its request for an emergency stay was pending. [Transcript of Final Pretrial Conference (5/24/19) at 19:24-20:22]. At trial, however, the Court prohibited VA from offering evidence of its reliance on advice of counsel between December 12 and 29, 2016. [ECF No. 435, Order at 2]. The Court further prejudiced VA by allowing Plaintiffs to tell the jury the Court had found that VA violated its order. [ECF No. 435 at 6]. Prior to trial, the Court granted partial summary judgment, concluding as a matter of law that VA had infringed Plaintiffs' copyrights and violated the DMCA. [ECF No. 323]. See Declaration of David Quinto, submitted concurrently herewith, for additional detail and support.

## III.   LEGAL STANDARD AND ARGUMENT

After a jury trial, a court may grant a new trial on all or some of the issues "for any reason for which a new trial [had] . . . been granted in an action at law in federal court" prior to the adoption of Rule 59. Fed.R.Civ.P. 59(a)(1)(A).

### A.   Allowing Evidence of the Contempt Ruling Was Prejudicial Error

Prejudicial errors in evidentiary rulings warrant a new trial. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). Prejudice is presumed. *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005). Here, the Court's evidentiary rulings were rife with prejudicial error, and VA is entitled to a new trial.

The Court denied VA's motion *in limine* to exclude evidence that it had been held in contempt for failure to comply with the preliminary injunction during a short period in December 2016, [ECF No. 368], allowing Plaintiffs to "state that the Court found that VA was in violation of the preliminary injunction" but directing them not to use the words "contempt" or "sanction." [ECF No. 435 at 6].

The Court considered the "finding of a violation" to be relevant to willfulness, but while that was certainly a fact of consequence in dispute, the contempt finding had no tendency to prove VA's state of mind. VA's state of mind while engaged in the accused conduct could be proved only by evidence of information VA had access to

*while it was still engaged in that conduct*. Information VA received *after* it ceased the conduct has no tendency to prove an earlier state of mind. VA shut down its business on December 29, 2016, immediately after the Court denied its request to stay enforcement, and before the Court ordered VA to show cause re: contempt. [ECF Nos. 166, 167, 168]. The Court issued the contempt order January 6, 2017, more than a week later. [ECF No. 175]. The fact that "the Court found that VA was in violation of the preliminary injunction" was irrelevant to the issue of willfulness. Under Rules 403 and 404(b), the evidence should have been precluded due to the risk of unfair prejudice, confusing the issues, misleading the jury, and improper character evidence. As the Court expressly acknowledged, "use of the terms 'contempt' and 'sanction'" would "pose a great risk of unduly prejudicing the jury." [ECF No. 435, at 6]. The same is true by allowing the same information by a different word. And in their closing argument Plaintiffs took full advantage of the judicial imprimatur granted them: "Judge Birotte held that VA violated his order. It turns out, when a judge says stop, it means stop. VA acted willfully. There is no question about it." [TT 1002:25-1003:2]. Plaintiffs also explicitly argued the improper character-evidence implications: "[n]ow look. A tiger does not change his stripes. The same people who violated Judge Birotte's order for 17 days after it was issued were the same people who started the service and operated it day after day after day up until December 12th." [TT 1003:3-1003:8].

### B.    Excluding Advice of Counsel Evidence Was Prejudicial Error

The Court erroneously precluded VA from presenting evidence of advice of counsel during the period from December 12, 2016 to December 29, 2016, [ECF No. 435, Order at 2]. By combining this error with its order permitting evidence of the contempt finding, the Court effectively gutted VA's rebuttal of willfulness during that period while allowing Plaintiffs to argue the judge was already on their side.

The ruling was based on the incorrect finding that VA had improperly attempted to use privilege as both a shield and sword by withholding two documents responsive to a request for "advice of counsel . . . relating to VA's compliance or non-compliance

with the preliminary injunction." [ECF No. 435, Order at 2]. The Court ignored, however, that the first document (an email exchange among non-attorneys [See ECF No. 425-2, Exh. B. to Klaus Dec.]) was not an attorney-client communication, and was not withheld based on a privilege objection. The other document (an email from D. Quinto to N. Harmon [ECF NO. 425-4, Exh. D to Klaus Dec.]) was an attorney-client communication, but contained no advice. It simply forwarded the preliminary injunction, revealed Mr. Quinto wouldn't be surprised if the Court ruled against the antitrust claim, and laid out the next steps in the litigation. [Id.]. Mr. Quinto did not address whether VA should continue or cease its conduct, or whether he still believed the disc-based method was legal. [Id.]. It was not responsive to the document requests, and therefore was not wrongly withheld.

Further, these emails were not responsive to the separate request for documents showing advice regarding the legality of VA's Disc-Based System. Yet the Court excluded evidence of *all* advice received after December 12, including advice that related only to VA's continuing belief that its conduct was lawful. Whether VA's principals immediately complied with the injunction was irrelevant to whether they continued to believe in good faith based on their counsel's advice that their disc-based system was lawful. There was no basis for the Court to exclude that highly relevant evidence.

### C.    Admission of Redfox/AnyDVD Evidence Was Prejudicial Error

The Court denied VA's motion *in limine* to preclude Plaintiffs from offering evidence and argument that AnyDVD software was "illegal" or "foreign," [ECF No. 435, Order at 6], and overruled objections to testimony that the seller, RedFox, was on various "Notorious Markets Lists" published by a government agency. [*See*, *e.g.*, TT 202:10-202:17]. These evidentiary rulings were erroneous.

Plaintiffs argued the evidence was relevant to willful infringement, but it had no tendency to show VA's state of mind. In fact, their expert admitted that both RedFox and its predecessor, SlyFox, might not have been on the "Notorious Markets" list while

VA operated, and he had "no idea whether VA" even knew such lists existed. [TT 231:15-232:25]. Plaintiffs offered no evidence VA knew RedFox was violating the DMCA. Thus, evidence of *RedFox's* alleged illegal conduct said nothing of *VA's* state of mind. On the contrary, the evidence showed VA believed it acted lawfully based on counsel's advice that using AnyDVD to decrypt discs was permissible. [*See, e.g.*, TT 735:20-737:2]

Moreover, VA's state of mind with respect to *violation of the DMCA* has no tendency to prove its state of mind with respect to *infringement of copyright*. Those are two very different questions that are proved by very different evidence. A person may *access* a copyrighted work in knowing violation of the DMCA, and then proceed to *use* that work without infringing copyright. For example, a person might circumvent an access control on a DVD simply to watch a movie in private, or to make a copy for fair use criticism, comment, research, or scholarship. Simply put, the evidence was not relevant to willfulness. Its only purpose was to make VA appear guilty by association with a shady character, which was a central theme of Plaintiffs' presentation.[5]

### D.   Admission of Testimony by Robin Russell Was Prejudicial Error

The Court denied VA's motion *in limine* to exclude the testimony of Robin Russell, [ECF No. 435, Order at 7], thereby enabling her to speculate that VA threatened the livelihoods of "thousands of people" by drastically reducing the studios' revenues. [TT 460:2-460:16]. Her testimony was not based on any facts; there was no evidence that Plaintiffs lost any revenue because of VA. On the contrary, the evidence established that Plaintiffs likely earned more revenue because of VA—not less. [TT 620:19-622:19]. The improper implication of an existential threat to the movie industry was highly prejudicial.

---

[5] Plaintiffs repeatedly emphasized that the fox in RedFox's logo was "wearing a burglar's mask" in their opening statement, in their witness examination, and in their closing argument. [TT 153:8-153:22; 205:12-205:15; 1004:16-1004:21 ("It's a fox with a burglar's mask. That tells you all you need to know about what this software is for. It's for stealing.")].

CALL &
JENSEN

**E.     Preclusion of Witness Mark Fleming Was Prejudicial Error**

The Court erroneously sustained Plaintiffs' objection to allowing VA to call Mark Fleming to testify on the grounds that the proffered testimony was not relevant. [TT 424:13-429:6]. Absent the Court's ruling, Mark Fleming, a former executive at Google, would have testified that Google was interested in collaborating with VA to include filtering options for its Google Play streaming platform, but that a possible VA-Google partnership fell through because Google could not risk its relationships with the movie studios and its agreements with the studios prohibited it from allowing filtering. [TT 426:2-426:11]. This evidence would have tended to prove that VA moved forward with the Disc-Based Method because it believed the studios would not willingly grant licenses, and would hamper any other "lawful" filtering method, meaning VA had to find a legal alternative to licensing that was technologically independent. [TT 426:12-426:22, 427:23-428:13]. It would have also rebutted speculative testimony by Plaintiffs' expert, William Barnett, that "Google doesn't get pushed around," and that if it believed it could make money on the technology, Google "would reach agreements with the studios." [See TT 314:11-316:17]. Mr. Fleming's testimony was also relevant to Neal Harmon's credibility because it would have corroborated Harmon's testimony regarding his motivation and state of mind. [TT 427:3-427:16].

In closing Plaintiffs predictably made the arguments that Mark Fleming's testimony would have rebutted. They argued that VA could have offered filtering the right way through a licensed streaming service, citing Barnett's testimony. [TT 1005:3-1005:22]. And they also argued that Neal Harmon was not credible. [TT 998:20-999:8, 1003:3-1003:8]. The testimony of Mark Fleming, a non-party and genuinely neutral witness, would have provided a strong rebuttal to both arguments.

**F.     The Court's Willfulness Jury Instruction Was Prejudicially Erroneous**

As with errors in evidentiary rulings, prejudicial errors in jury instructions warrant a new trial, and prejudice is presumed. *Obrey v. Johnson*, 400 F.3d 691, 701

(9th Cir. 2005). Here, the Court's evidentiary rulings were rife with prejudicial error, and VA is entitled to a new trial.

VA requested the following instruction that, if adopted, would have properly stated the law with respect to the advice of counsel:

> Evidence that VA in good faith followed the advice of counsel would be inconsistent with a willful intent to infringe Plaintiffs' copyrights. Willfulness has not been proved if VA, before acting, made full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably followed the attorney's recommended course of conduct or advice in good faith.

[ECF No. 443, Disputed Jury Instructions at 22 of 63]. However, the Court rejected this instruction, and instead told the jury only that it "should consider all the facts surrounding the infringement, including whether VA's reliance on advice of counsel was reasonable and in good faith." [ECF No. 485, Closing Jury Instructions at 22]. Thus, the Court erroneously permitted the jury to find willful infringement even if it also found VA reasonably and in good faith relied on advice of counsel. Good faith reliance on advice of counsel completely rebuts willfulness. [6]

The Court also erred to the extent its instruction required VA to prove its reliance on legal advice was reasonable. The idea that a client cannot rely on legal advice if he "should have known" the advice was unsound finds no support in any binding authority.[7] Such a rule injects a negligence standard into the willfulness inquiry, rather than the well-established standard of actual knowledge or recklessness. *See Erickson Productions*, 921 F.3d at 833. As the Eighth Circuit has confirmed, it is not reckless to

---

[6] See discussion below, Section III.N.

[7] The Ninth Circuit has not yet specifically addressed the effect of advice of counsel on willfulness in the context of civil copyright infringement, but the doctrine is well developed in criminal cases where specific intent—i.e., willfulness—is an element of the crime. *See, e.g.*, *C.I.T. Corp. v. U.S.*, 150 F.2d 85, 95 (9th Cir. 1945). This jurisprudence would obviously apply to any criminal prosecution for copyright infringement or violation of the DMCA. *See* 17 U.S.C. § 506(a)(1), 1204(a).

CALL & JENSEN

rely on an attorney's advice that a particular course of conduct does not infringe copyright, even if the advice turns out to be incorrect. *RCA/Ariola Intn'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988).

### G.  Faulty Instructions on Punitive Statutory Damages Were Prejudicial

VA requested that the model general instruction on statutory damages be modified slightly to clarify that punishment and deterrence should be considered only "when appropriate." [ECF No. 443, Disputed Instructions at 17 of 63]. VA requested the jury be instructed to "render an award within the statutory range in an amount you consider just," and also requested language cautioning the jury that even when punishment and deterrence are appropriate, statutory damages "are not intended to result in devastating liability for infringers, or to grant excessive windfalls to copyright owners." [ECF No. 443, Disputed Instructions at 36 of 63]. The requested instruction would have informed the jury that the amount "may exceed what you believe Plaintiffs' actual damages were if you consider such an award to be just, but it should not be divorced entirely from economic reality." [ECF No. 443, Disputed Instructions at 36 of 63]. It would also have cautioned the jury not to award "an amount that is so excessive or severe as to be oppressive—even if you believe VA should be punished." [ECF No. 443, Disputed Instructions at 36 of 63].

The Court rejected these requests. Instead, its instructions strongly implied that punishing VA was mandatory, and that imposing an annihilating punishment was proper. In particular, the Court said the upper limit was only "constrained by the statutory . . . maximum," and that statutory damages should be imposed to punish VA "whether or not there is evidence of the actual damage suffered by the plaintiff or the profits reaped by the defendant." [ECF No. 485, Closing Instructions at 23]. The Court then went even further, affirmatively instructing that "[t]here is no required nexus between the amount of statutory damages awarded and any damages suffered by a plaintiff or any profits reaped by a defendant." [*Id*. at 23].

Contrary to the Court's instruction, the statutory maximum is not the only upper boundary placed on a statutory damages award. Rather, the statute itself imposes a requirement that an award within the statutory range be "just." 17 U.S.C. § 504(c)(1). The Copyright Act (the "Act") requires that the court (here, the jury) consider in its discretion whether the amount awarded is just. Failure to exercise that discretion is an abuse of discretion. *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990). By permitting the jury to award statutory damages without considering whether the amount was just, the Court failed to insure the jury exercised its discretion within proper bounds. Plaintiffs capitalized on this failure by unabashedly calling for the harshest, most devastating statutory damages award possible.

Further, as explained in VA's motion to alter the judgment, an award within statutory limits cannot stand if it violates due process. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962-63 (8th Cir. 2019) (minimum statutory damages of $1.6 billion ($500 per violation) was "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."). Courts have somewhat informally adapted this principle to copyright cases with rules of thumb, such as that statutory damages should be "woven out of the same bolt of cloth as actual damages," *see, e.g.*, *Coach, Inc. v. O'Brien*, No. 10 CIV. 6071 JPO JLC, 2012 WL 1255276, at *3 (S.D.N.Y. Apr. 13, 2012), should "bear some relation to actual damages suffered," *Yurman Studio, Inc. v. Castaneda*, No. 07 CIV. 1241 (SAS), 2008 WL 11397766, at *2, and "cannot be divorced entirely from economic reality." *Id.* at *4. The instruction proposed by VA would have reined in jurors bent on violating VA's due process right by cautioning them against an excessive award.

## H.    Faulty Instructions on the Statutory Damage Factors Were Prejudicial

In its instruction outlining the factors relevant to statutory damages, the Court invaded the province of the jury by directing it to weigh several disputed factors against VA, and by omitting a relevant factor that the jury should have considered. VA requested the Court instruct the jury to consider, among other factors: (1) "[w]hether

VA had a reasonable, good faith basis for continuing its infringing conduct after receiving notice of Plaintiffs' claims;" (2) "[w]hether there is a need to deter VA or other potential infringers;" and (3) "[w]hether the harm to Plaintiffs was mitigated in any way." [ECF No. 443, Disputed Instructions at 36 of 63]. Instead, the Court instructed the jury to consider: (1) "VA's continuation of infringement after notice or knowledge of copyright claims;" and (2) "the need to deter VA and other potential infringers." [ECF No. 485, Closing Instructions at 23].

In rejecting VA's proposed wording, the Court directed the jury to ignore the genuine factual disputes underlying these factors. The Parties vigorously disputed whether VA acted culpably—both before and after notice of Plaintiffs' claims—and a reasonable jury could have concluded that VA did not need to be punished or deterred. VA also offered unrefuted evidence of Plaintiffs' failure to mitigate their alleged harm.[8] The evidence also supported a finding that VA acted responsibly, and believed in good faith its conduct was lawful. [TT 519:6-526:17, 528:5-535:21,[9] 537:13-542:21]. Plaintiffs, on the other hand, urged the jury to ignore VA's reliance on legal advice and impose the maximum punishment. [TT 997:8-1011:13]. The Court's instruction effectively endorsed Plaintiffs' theory, requiring the jury to assume deterrence was necessary, and that VA's conduct after notice was wrongful. By putting its thumb on the scale, the Court invaded the province of the jury to VA's prejudice.

Moreover, having decided to instruct the jury regarding *any* factors relevant to the determination of statutory damages, the Court should have instructed it regarding *every* relevant factor identified by either side. Whether Plaintiffs reasonably mitigated their alleged harm was undoubtedly relevant. *See Malibu Media, LLC v. Reeves*, No. 1:12-CV-00841-SEB, 2013 WL 5487424, at *3 (S.D. Ind. Sept. 27, 2013) (considering

---

[8] Plaintiffs ignored VA's letter and delayed taking overt action for more than a year. [See TT 740:22-742:6, 743:2-744:3].
[9] A portion of this testimony was stricken pursuant to the Court's erroneous evidentiary ruling on a motion *in limine*.

both actual damages and "the actions Plaintiff took to mitigate such damages" in determining statutory award). The Court erred in excluding this factor.

## I.   Instructions on DMCA Damages Were Erroneous and Prejudicial

VA requested an instruction that would have required the jury to decide first whether Plaintiffs were entitled to statutory damages for the DMCA violations, and only afterward decide what amount of statutory damages would be just under the circumstances. [ECF No. 443, Disputed Instructions at 47 of 63]. Statutory damages would only have been awarded if the jury found Plaintiffs had suffered "some unique injury" from the violation that was "different from the injuries they suffered as a result of the infringement of their copyrights." [Id.]. The Court rejected VA's request, and instructed the jury to award DMCA statutory damages. [ECF No. 485, Closing Instructions at 24].

Whether Plaintiffs suffered unique injury was, at best, a disputed issue that should have been presented to the jury. Several District Courts have held that a party cannot recover under both the DMCA and the Act for the same injury. *See, e.g., Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 WL 3963124 at *10 (S.D.N.Y. Aug. 13, 2014) ("the law ordinarily forbids a plaintiff from recovering twice for the same injury"); *Adobe Systems Inc. v. Feather*, 895 F. Supp. 2d 297, 303 n. 5 (D. Conn. 2012) ("Plaintiffs do not seek separate damages for their DMCA claim, nor could they."); *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822 (SLT)(RM), 2009 WL 2905780, at *5 (E.D.N.Y. Sept. 10, 2009) (denying duplicative statutory damages under DMCA, Act, and Lanham Act where "there [was] no doubt that the damages sustained by Plaintiffs are coextensive"). Plaintiffs made no effort to prove a unique injury flowing from the DMCA violations, and a properly instructed jury very likely would not have awarded statutory damages under the DMCA.

## J.   Instructions Regarding Innocent DMCA Violations Were Erroneous

The Court erroneously refused VA's request to instruct the jury that VA's violation of the DMCA was innocent if "it reasonably and in good faith believed its acts

did not violate the DMCA." [ECf No. 443 at 58 of 63]. In the context of copyright infringement, a defendant may prove innocent intent by establishing "its good faith belief in the innocence of its conduct," and "that it was reasonable in holding such a belief." *Coogan v. Avnet, Inc.*, No. CV040621PHXSRB, 2005 WL 2789311, at *4 (D. Ariz. Oct. 24, 2005); *see also Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*, 770 F. Supp. 1014, 1027 (E.D. Pa. 1991) (copyright infringer proves "that its infringement was innocent . . . by showing that [its] infringing conduct was made in a good faith belief of the innocence of [its] conduct, [and] also that [it] was reasonable in holding such good faith belief" (internal quotation marks omitted)). Neither Plaintiffs nor the Court offered any reason why the same should not hold true for violations of the DMCA. Had the Court given the requested instruction, it would have supported VA's argument that it acted innocently pursuant to advice of counsel, and the jury could have reduced DMCA statutory damages to zero based on VA's innocent intent.

### K.   Faulty Instruction on Innocent Copyright Infringement was Prejudicial

The Court erroneously denied any instruction regarding innocent copyright infringement, reasoning that it was barred under 17 U.S.C. § 401(d). [*Compare* ECF No. 416, Disputed Instructions at 20-21, *with* ECF No. 485, Closing Instructions at 21]. Contrary to the Court's ruling, proof of innocence under section 504(c)(2) is not a defense "in mitigation of actual or statutory damages" barred by section 401(d), but rather merely expands the jury's discretion. The only true "defense based on innocent infringement" is contained in 17 U.S.C. § 405(b), which provides for complete mitigation of all damages when an innocent infringer relies on a published copy from which the notice was omitted. Had the jury been properly instructed, it could have awarded statutory damages as low as $163,800 ($200 per work).

### L.   The Court Erred in Responding to the Jury's Note

During its deliberations, the jury requested "the exhibit number or copy of the FMA." [ECF No. 489]. This note did not request the Court's analysis of the FMA, or its

critique of VA's interpretation. Because there was no separate exhibit containing only the FMA language, VA proposed the Court either provide a demonstrative the jury had seen during trial, or provide another document containing only the language of the FMA, thereby answering the jury's question directly, and without bias. Plaintiffs, on the other hand, proposed that the Court identify its preliminary injunction order, Trial Exhibit 203, which quotes a portion of the FMA immediately followed by the Court's opinion that it does not support VA's position, and that VA's theory was "directly" contradicted by legislative history. [See Trial Exhibit 203, at 7]. The exhibit opines repeatedly that the FMA "clearly," "directly," and "unambiguous[ly]" contradicted VA's arguments. [Id. at 11].

The Court refused to provide the demonstrative or any other wholly neutral document with only the FMA language, but instead identified both Trial Exhibit 2156-7 (Mr. Quinto's opinion letter) and Trial Exhibit 203-12 (the Order rejecting Mr. Quinto's reasoning). [ECF No. 491]. The Court's response to the jury question was highly prejudicial and improper. By directing the jury to the order, the Court essentially told the jury that it was on Plaintiff's side.

## M.    The Court Made an Error of Law Resolving the Fair Use Defense

The Court's granting of Plaintiffs' motion for summary judgment was improper as the fair use defense posed factual issues for the jury to determine.  While the Act provides "general guidance about the sorts of copying that courts and Congress most commonly had found to be fair uses," (*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994); 17 U.S.C. § 107), other purposes may also be legitimate fair use, though not enumerated—for example, parody—and can be identified by courts on a case-by-case basis. *See Campbell* at 577, 579-83. In determining whether particular circumstances involve fair use, courts must consider four factors enumerated in the statute, *see* 17 U.S.C. § 107, but may also consider any other factors that are relevant in a particular case. Here, the evidence presented to the Court established genuine factual

disputes as to fair use.[10] The District Court, however, entirely disregarded what should have been the most relevant factor, namely the market impact, and erroneously granted summary judgment.

The overarching purposes of VA's use were clearly legitimate. It intended to provide a service and technology described in the FMA, and it used "master files" to research and identify portions of video and audio that customers may desire to skip or mute. 17 U.S.C. § 110(11); [ECF No. 256, McDonald Dec. at 2-7]. Private individuals are free to filter the content they see and hear during a private performance as they see fit. 17 U.S.C. § 110(11). There is nothing improper about VA's desire to facilitate that right. Because VA's general purposes for its conduct were proper, whether it acted fairly in its specific execution of those purposes should have been determined by the jury with reference to the relevant factors. This inquiry involved genuine factual disputes, and a reasonable jury could have resolved them in VA's favor.

**First Factor**: the "purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). A reasonable jury could have decided not to weigh this factor against fair use. *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 562. Questions of fact: was there a "customary price" for filtered transmissions; did VA paid an adequate price; did VA's system, which required customers to purchase an authorized copy, supplant the original? *See Id.,* and *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). **Second Factor**: whether the copyrighted work is primarily creative or primarily factual in nature, as well as whether it is unpublished. *See Harper & Row*, 471 U.S. at 563-64. This factor "has rarely played a significant role in the determination of a fair use

---

[10] Had the jury been permitted to resolve the fair use question, much of the prejudice VA experienced at the trial would have been avoided. For example, Plaintiffs and their attorneys would not have been permitted to repeatedly call VA a pirate [*See, e.g.*, TT 478: 23-478:25, 482:18-482:19, 484:8-484:23, 996:9-996:12, 1015:25-1016:2, 1019:2-1019:5, 1019:12-1019:14, 1021:5-1021:8], or remind the jury *ad nauseum* that the Court considered VA to be a lawbreaker. [*See, e.g.*, TT 151:23-151:24, 153:16-153:18, 996:6-996:8, 999:19-1000:7].

dispute," *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015), and a reasonable jury could have given it no weight in this case. **Third Factor**: "[W]hether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole,' § 107(3) . . . are reasonable *in relation to the purpose of the copying*." *Campbell*, 510 U.S. at 586 (emphasis added). Copying an entire work may be permitted if essential to the legitimate purpose of the use. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448-56 (1984). Here, VA could not have accomplished its legitimate purposes without copying the entire work. **Fourth Factor**: Market Impact. The Court opined that the absence of harm to Plaintiffs' market was "immaterial." [ECF No. 323 at 19 (citing *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1120 (9th Cir. 2000))]. Unlike the defendant in *Worldwide Church of God*, VA identified a legitimate purpose justifying its use. VA was thus entitled to a thorough inquiry into every relevant factor relating to the fairness of its specific conduct, including whether its use negatively impacted the market for Plaintiffs' copyrighted works. VA's service actually *increased* the demand for authorized copies of Plaintiffs' copyrighted works. [TT 620:19-622:19]. **Additional Factors**. The affirmative steps VA took to avoid harm to Plaintiffs was also relevant. VA established a reliable system for making sure customers could not stream filtered performances of movies unless they actually owned and paid for an authorized copy. [*See, e.g.*, TT 652:3-653:2]. Thus, the likelihood that VA or anyone else could profit unfairly from the use was nil. The jury should have been allowed to weigh all of the above factors.

### N.     The Willfulness Finding Is Against the Clear Weight of ohe Evidence

A new trial is warranted if, in the opinion of the district court, the jury's verdict is against the weight of the evidence. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). A trial judge has "the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256

1   (9th Cir. 1957). Here, unrebutted evidence demonstrated VA's good faith. To obtain a

2   verdict of willful infringement, Plaintiffs had to prove VA either actually knew its

3   conduct was infringing, or that it acted with "a reckless disregard for, or willful

4   blindness to, the copyright holder's rights." *Erickson Productions, Inc. v. Kast*, 921

5   F.3d 822, 833 (9th Cir. 2019). Evidence that an infringer merely "should have known"

6   its acts constituted copyright infringement cannot support a verdict of willful

7   infringement. *Id.* Rather, it must be proved that the infringer either took "deliberate

8   actions to avoid confirming a high probability of wrongdoing," or knew of a

9   "substantial and unjustified risk of such wrongdoing." *Id.*

10          VA's founders sought legal advice to determine whether the conduct was lawful.

11   [*See* TT 513:8-514:21, 518:14-518:24, 519:6-521:1, 528:5-530:14]. They moved

12   forward with the "Disc-Based" model only after their counsel confirmed his opinion it

13   complied with the law. [TT 719:19-720:1]. They followed their counsel's advice at all

14   times. [TT 720:12-721:25]. In light of this evidence, a verdict of nonwillful

15   infringement clearly should have been reached.

16          Plaintiffs argued in closing that willfulness was easy to find. [TT 999:18-999:19].

17   But none of their evidence had any probative value to support such a finding. The

18   evidence proved only that VA trusted its own counsel's legal opinion over that of their

19   adversaries and the Court. First, Plaintiffs argued VA failed to immediately comply

20   with a preliminary injunction [TT 999:18-1000:7]. The fact that VA continued to

21   operate the disc-based service for two weeks after the preliminary injunction took effect

22   while seeking a stay does not prove it knew its conduct was infringing. The clear weight

23   of the evidence showed VA continued to believe in good faith the disc-based service

24   was lawful. The order did not persuade VA that its conduct was infringing. [See TT

25   841:19-841:22]. Indeed, VA searched for a solution that would permit it to continue

26   operating the disc-based service with respect to all non-plaintiff works, because of its

27   belief re: legality. [TT 533:20-534:2]. The clear weight of this evidence is not that VA

28   "actually knew" its conduct was infringing. Further, the fact that VA in good faith

agreed with its counsel rather than a preliminary ruling by the Court cannot be deemed reckless disregard or willful blindness. The preliminary injunction was not a final pronouncement on the legality of the disc-based service, and it certainly did not prevent VA from acting in good faith while it continued to pursue its position that its conduct was lawful.

Second, Plaintiffs' argument that because VA used AnyDVD software to access the content on discs, it must have known that its disc-based system infringed copyright, was completely illogical. [TT 1003:17-1005:2]. VA's use of AnyDVD had no relevance whatsoever to whether it knew the disc-based method would infringe copyright. Plaintiffs argued that if you have to use AnyDVD to get around encryption and access copyrighted content, "you know you are doing something wrong." [TT 1003:22-1003:24]. But even if that untrue premise were accepted,[11] a vague understanding that they were "doing something wrong" by *accessing* the content does not prove VA knew or even suspected they were infringing copyrights by *using* that content to operate a filtering business. The legality of *access* to copyrighted content and the legality of *use* of copyrighted content are different legal questions. One could brazenly violate the DMCA's restrictions on accessing copyrighted content while still using that content for any non-infringing purposes. For example, a person might use AnyDVD to access a movie to extract a two-second clip to use as a meme on social media. Thus, VA's use of AnyDVD has no bearing on whether VA believed it was infringing Plaintiffs' copyrights.

Third, Plaintiffs' argument that a finding of willfulness could be based on evidence that VA was aware of other legal filtering options was similarly illogical. [TT 1005:3-1007:19] The jury's job was to decide whether VA *actually knew* the business model it chose infringed copyright, or whether in pursuing that model it acted with



---

[11] The clear weight of the evidence was that VA believed in good faith there was nothing wrong with using AnyDVD to decrypt discs, and its counsel, Mr. Quinto, advised them it was lawful for VA to decrypt in light of the Family Movie Act. [See.e.g., TT 638:3-638:8, 735:20-737:2; 749:20-750:5].

reckless disregard or willful blindness to Plaintiffs' rights. The fact that VA did not choose other filtering alternatives has no tendency to make it more or less probable VA knew or even suspected the Disc-Based Model to be infringing.

Fourth, Plaintiffs' argument that VA acted willfully because it was "planning its narrative all along" is wholly unsupported. [TT 1007:20-1008:23] The clear weight of the evidence proved that the Harmons and Quinto were true believers. Plaintiffs themselves acknowledged to the jury that Quinto "still insists he's right."[12] [TT 1001:10-1001:12]. While Plaintiffs uncharitably mischaracterized VA's attitude as "being in denial," [TT 1001:12], they could not make a case that VA's belief in the correctness of its position was insincere. Plaintiffs pointed to an email from Quinto in which he said, "[w]e're taking charge of the narrative even before anyone else is listening," and that his "preliminary memo is being crafted with the idea that it will someday become part of the court record." [TT 1008:1-1008:14]. This email, however, is fully consistent with VA's good faith. VA always expected movie industry resistance to its filtering business, and one of the reasons it sought advice of counsel before launching the disc-based method was because it anticipated litigation regardless of the legality of the service. [See TT 518:14-518:24, 742:7-743:1]. The fact that Neal Harmon informed his attorney that he expected the business model would be challenged in court is fully consistent with his testimony that he wanted to make sure they got it right, so they would not lose a judicial challenge. [Id.] It would have made no sense for Mr. Quinto, who was in private practice and had no prior ties to VA, to risk his reputation by telling Mr. Harmon what he wanted to hear. [See TT 841:10-841:18]. Similarly, it would have made no sense for the Harmons to launch a business they did not expect to survive the anticipated legal challenge.

---

[12] Plaintiffs' argument that VA's continued belief in the validity of their legal theory at the time of trial constitutes willful blindness, [see TT 1001:12], was improper. It is not willful blindness to disagree with a lower court's decision. Litigants are entitled to appeal the decisions of district judges. Moreover, VA's state of mind at the time of trial could not have had any relevance to its state of mind years earlier when the Court ruled.

The additional evidence VA offered to rebut willfulness was highly convincing. Both Neal Harmon and Quinto testified at length about VA's process of investigating the lawfulness of the Disc-Based Method prior to its launch. VA hired one of the most preeminent lawyers in the entertainment industry and provided him with all material facts relating to the contemplated business model. [TT 519:12-520:17]. Based on the information provided, Mr. Quinto researched the law and prepared a thorough and well-reasoned advice memorandum concluding that the contemplated conduct would not infringe copyright. [TT 718:7-740:11]. Prior to launching its business, VA notified potentially interested parties and solicited their feedback (including the studio Plaintiffs). [TT 740:22-742:6]. Receiving no objection, VA moved ahead with its plans. [TT 743:2-744:3].

Mr. Harmon was surprised and disappointed when the lawsuit was filed—not because he hadn't expected a lawsuit, but because of the delayed timing and that it was Disney leading the charge. [TT 440:4-440:16; 526:23-527:2]. VA continued to operate its business believing it was lawful, while simultaneously defending itself in court. [TT 749:20-750:5]. While its legal arguments have so far been rejected by the Court, VA maintains that the Disc-Based Method is lawful, and intends to appeal the District Court's judgment to the Ninth Circuit and, if necessary, the Supreme Court. Plaintiffs offered no evidence whatsoever to contradict this evidence.

Plaintiffs argued the jury could have found willful infringement if VA's reliance on advice of counsel was unreasonable.[13] They faulted VA for not seeking a second opinion, and for not repeatedly asking its lawyers to re-evaluate their opinion. [TT 1008:15-1008:19]. Plaintiffs argument is that VA *should have known* Quinto's advice was wrong (even though none of them had Quinto's legal expertise), and should not have relied on it. [See TT 1009:17-1009:19]. But this argument—and the jury

---

[13] Unsurprisingly, Plaintiffs seized on the Court's faulty instruction, arguing, "[y]our reliance on advice of counsel has to be reasonable. It has to be reasonable." [TT 1000:11-1000:12].

instruction on which it was based—improperly injected a negligence standard into the willfulness inquiry. *Erickson Prod.*, 921 F.3d at 833. Whether VA exercised poor judgment is insufficient; the standard is actual knowledge, reckless disregard, or willful blindness.

The "advice of counsel" defense has never permitted the jury to consider the reasonableness of a defendant's reliance. On the contrary, reliance on advice of counsel rebuts willful intent so long as the defendant acts in good faith and does not withhold material facts from the advising attorney. *See, e.g.*, *Williamson v. U.S.*, 207 U.S. 425, 453 (1908); *Hultman v. Tevis*, 82 F.2d 940, 941 (9th Cir. 1936). Non-lawyers cannot be expected to gauge the validity of their lawyers' advice; they are justified in accepting and acting on the advice of their counsel so long as they do so in good faith.

Regardless of the Court's instruction on willfulness, the clear weight of the evidence required a finding that VA was reasonable. Quinto's opinion memorandum was thorough and supported by reasons and authorities, and remains his opinion today. [Trial Exhibit 2156]. There is simply no evidence to support a finding that the advice was so clearly incorrect that non-lawyers at VA could not have reasonably followed it.

## O.    The Damages Award Is Against the Clear Weight of the Evidence

The amount of statutory damages awarded is against the clear weight of the evidence. The Act requires a court to award statutory damages "in a sum [it] *considers just*." 17 U.S.C. § 504(c)(1) (emphasis added). The same is true for DMCA statutory damages. *See* 17 U.S.C. § 1203(c)(3). The award must be "just" whether the infringement is innocent, willful, or neither. A new trial is warranted when the clear weight of the evidence of what can properly be deemed just is in conflict with the jury's verdict. The requirement that a court set an award that is "just" is not mere surplusage. It imposes an obligation to consider the evidence, and to award statutory damages in an amount that actually comports with the Act's interest in just compensation, punishment, and deterrence. Where actual damages can be measured, to be "just," statutory damages

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VIDANGEL, INC.'S MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE REMITTITUR

should bear some relation to them. A widely cited[14] rule of thumb is that "to the extent possible, statutory damages should be woven out of the same bolt of cloth as actual damages." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[E][1], at 14-69 (2003)).[15]

Given the clear weight of the evidence presented at trial, the statutory damages awards are completely out of kilter with any notion of just compensation or legitimate punishment or deterrence. The jury's awards are clearly not tethered to any such concepts. Rather, the jury simply awarded half the statutory maximum. The shortcut of picking an outrageous number based on nothing more than a divisor from the statutory maximum without proper regard for whether that number is just is not a valid exercise of discretion. The jury was obligated to review the evidence, and to actually consider based on that evidence what amount was "just." The jury was not properly instructed and clearly did not do that.

At trial, Plaintiffs offered no evidence of their actual damages, but complained that the harm to their business and industry was immeasurable. But actual damage was not difficult to prove.[16] VA offered compelling expert evidence on this point, including

---

[14] A Westlaw Next search for the Boolean phrase, (statutory /s "same bolt #of cloth"), using the "All Federal" jurisdiction yields twenty-nine district court cases citing the rule.

[15] Even Plaintiffs' cited case *Peer Int'l Corp. v. Pausa Records, Inc.* explicitly requires that "[i]n measuring the damages, *the court is to be guided by what is just in the particular case*." (emphasis added). 909 F.2d 1332, 1336 (9th Cir. 1990) Thus, the court's discretion may be wide, but the exercise of that discretion must be justified and justifiable based on the evidence presented. The statutory minimum and maximum establish the outside limits of what can be awarded, but within that range is another minimum and maximum of what the evidence can support. On the one hand, a just award cannot leave the copyright owner without compensation, and on the other hand an award that exceeds what is sufficient to serve legitimate interests of punishment and deterrence is unjust

[16] Plaintiffs' argument that the jury should consider damage to their businesses generally, or to the industry as a whole, was also improper. The question presented to the jury was not whether VA's disc-based method generally threatened Plaintiffs' business. Rather, the question was how much Plaintiffs should be compensated for damage to specific copyrighted works resulting from the infringement of those specific works.

CALL & JENSEN

two alternative measures of Plaintiffs' actual damage: Plaintiffs either suffered no actual damages (but rather benefited from the infringement), or at most Plaintiffs lost profits of around $211,000. [TT 614:20-619:15]. Plaintiffs criticized this evidence, but offered no alternative to it.[17] There was no reason that statutory damages could not have been "woven out of the same bolt of cloth as actual damages." Had the jury accepted the highest evidence of actual damages, even the statutory minimum, $614,250, would have been almost three times Plaintiffs' actual damages. The jury's award of $61,425,000 is more than 291 times as much, and is unjust.

No evidence was offered to prove any additional harm unique from the damage resulting from DMCA infringement. But the jury, consistent with its formula, nevertheless awarded Plaintiffs half the statutory maximum for the DMCA. This award bears no relation to legitimate interests in just compensation, punishment, or deterrence.

The jury failed to set the statutory damages in amounts that can be considered just based on the evidence.

### P.    The Damages Award Is Excessive

Excessive damages are one of the historical grounds for granting a motion for new trial. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). As an alternative to a new trial, the Court may offer to allow the Plaintiffs to accept a remittitur in "the maximum amount sustainable by the proof." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014); *see also Hetzel v. Prince William County, Va.*, 523 U.S. 208, 210-11 (1998).

Damages are considered excessive when they are "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). That is clearly the case here. The jury's award of $61,425,000 in

---

[17] VA's expert witness addressed all relevant facts, and incorporated them into his analysis. Plaintiffs' failure to present any alternative measure in rebuttal shows that VA's analysis was accurate.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VIDANGEL, INC.'S MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE REMITTITUR

statutory damages for copyright infringement and $1,023,750 for violation of the DMCA were excessive in the extreme, and obviously unreasonable when compared to any measure of Plaintiffs' actual damages and legitimate interest in punishment or deterrence.

While an argument could be made that Plaintiffs lost some profit—up to $211,000—as a result of VA's Disc-Based Service, there was no evidence that Plaintiffs suffered any actual damage stemming from VA's violations of the DMCA. Under these circumstances, the highest amount the Court could have considered just is the statutory minimum for nonwillful copyright infringement—$614,250. By nearly tripling the most generous estimate of Plaintiffs' actual damages, such an award would have both compensated Plaintiffs and served to deter VA and others. With respect to the DMCA, an award of the statutory minimum—$163,800—would likewise be more than sufficient to satisfy any interest in compensation, punishment, and deterrence.

### Q.   Cumulative Prejudice

The cumulative prejudice of all of the above errors and issues must be considered. *See Rinker v. Napa County*, 724 F.2d 1352, 1354 (9th Cir. 1983). Here, the cumulative effect led to an oversized verdict and clearly resulted in prejudice.

Dated:  October 21, 2019                   CALL & JENSEN
                                           A Professional Corporation
                                           Mark Eisenhut
                                           Samuel G. Brooks


                                           By:  /s/Samuel G. Brooks
                                               Samuel G. Brooks

                                           Attorneys for Defendant VidAngel, Inc.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VIDANGEL, INC.'S MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE REMITTITUR